196 F.3d 339 (2nd Cir. 1999)
 P.J. WINTER, Plaintiff-Counterclaim-Defendant-Appellant-Cross-Appellee,
v.
UNITED STATES OF AMERICA, Defendant-Counter-Claimant-Appellee,
INTERNAL REVENUE SERVICE, Defendant.
UNITED STATES OF AMERICA, Defendant-Counter-Claimant-Appellee,
v.
P.J. WINTER, Plaintiff-Counterclaim-Defendant-Appellant-Cross-Appellee,
STEVEN J. ROMER, Counterclaim-Defendant-Appellee-Cross-Appellant,
RITA ROMER, Counterclaim-Defendant-Appellee-Cross-Appellant.
 Docket Nos. 98-6086(L) & 98-6118(XAP)
August Term, 1998
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: February 9, 1999
Decided: November 08, 1999
 
 Appeal from a judgment of the United States District Court for the Southern District of New York (Kevin Thomas Duffy, Judge), entered February 19, 1998, denying the counterclaim defendants' motion for summary judgment and granting the government's motion for summary judgment.
 Affirmed in Part, Reversed and Vacated in Part, and Remanded.[Copyrighted Material Omitted]
 Steven J. Romer, pro se, Ossining, NY, P.J. Winter, pro se, Mt. Vernon, (NY, Rita Romer, pro se, Mt. Vernon, NY, on the brief) for Counterclaim- Defendants-Appellants.
 Jeffrey Oestericher, Assistant United States Attorney, New York, NY (Mary Jo White, United States Attorney for the Southern District of New York, Edward A. Smith, Assistant United States Attorney, New York, NY, of counsel), for Counterclaimant-Appellee.
 Before: WINTER, Chief Judge, VAN GRAAFEILAND and PARKER, Circuit Judges.
 PARKER, Circuit Judge:
 
 
 1
 Counterclaim defendants Petrus J. Winter, Steven Romer, and Rita Romer appeal from a judgment of the United States District Court for the Southern District of New York, (Kevin Thomas Duffy, Judge), entered February 19, 1998, finding them personally liable for a tax assessment of $93,592.97 pursuant to 26 U.S.C. 6672(a) based on the failure of Atlas Protective Services to remit withholding taxes to the Internal Revenue Service as required by 26 U.S.C. 7501(a). The judgment was entered in accordance with a Memorandum and Order of the district court, dated February 10, 1998.
 
 
 2
 We affirm in part, reverse and vacate in part, and remand.
 
 I. BACKGROUND
 
 3
 This case arises out of the failure of Atlas Protective Services to remit federal withholding taxes to the Internal Revenue Service ("IRS") in accordance with 26 U.S.C. 7501(a) and the IRS's efforts to hold some of Atlas's owners, officers, and employees personally liable for a portion of the unremitted taxes, pursuant to 26 U.S.C. 6672(a). Except where otherwise noted, the facts set forth in sections I.A. and I.B. are undisputed.
 
 A. The Players
 
 4
 In 1984, Atlas Guard Service, Inc. ("Atlas Guard") and Penn Protective Services, Inc. ("Penn") were wholly owned subsidiaries of Servisco. On or about July 1, 1985, Astro Security International Corp. ("Astro") purchased Atlas Guard and Penn from Servisco. Shortly after the purchase, Astro changed the name of Atlas Guard to Atlas Protective Services ("Atlas"), merged Penn's operations into Astro, and dissolved Penn.
 
 
 5
 At all relevant times, Steven Romer was the president and majority owner of Astro and the president of Atlas. Edward Uribe was the vice president of Atlas and Astro and owned approximately 20% of Astro's stock. Rita Romer, Steven Romer's wife, was the corporate secretary of both Astro and Atlas and was a member of each company's board of directors. During the last quarter of 1986 or the first quarter of 1987, Rita Romer also became the owner of approximately 20% of Astro's stock. Petrus J. Winter, Steven Romer's son-in-law, was the controller of Astro and Atlas. Winter had no ownership interest in Astro.
 
 B. The Tax Credit and Failure to Remit
 
 6
 Employers subject to the Internal Revenue Code (the "Code") are required to withhold income and FICA taxes from their employees' wages and to remit those withholding taxes to the IRS. During the first and second quarters of 1984, while Atlas Guard and Penn were still owned by Servisco, Atlas Guard remitted both its own withholding taxes and those withheld by Penn. Due to an apparent clerical error, the IRS credited all of the first and second quarter payments to Atlas Guard's account, and none to Penn's account. This mistake left Atlas Guard with tax credits of $89,495.43 and $25,169.59 for the first and second quarters of 1984, respectively. Penn's IRS account showed delinquencies in the same amounts.
 
 
 7
 At the time Astro purchased Atlas Guard and Penn from Servisco in 1985, both Servisco and an independent auditor represented that Atlas Guard had a total withholding tax credit of $114,665.02 and that Penn was current in its tax payments. When Astro re-christened Atlas Guard and dissolved Penn, it assigned Atlas the same employer tax identification number formerly assigned to Atlas Guard. As a result, Atlas believed that it had a tax credit of over $114,000 in its account with the IRS.
 
 
 8
 In July 1985, Atlas sought a refund from the IRS. In response, the IRS conducted an audit of Atlas's books. Although the parties dispute the date,[1] at some point an IRS agent prepared and sent to Atlas two "reconciliation sheets" indicating that Atlas had a tax credit of $89,495.43 for the first quarter of 1984 and a tax credit of $25,169.59 for the second quarter of 1984. Nonetheless, by the end of 1986, the IRS had still not acted on Atlas's refund request, despite Atlas's repeated requests that it do so.
 
 
 9
 In late 1986, Astro sold Atlas's mainland United States operations to a third party, retaining only Atlas's Puerto Rico operations. In February 1987, Astro sold Atlas's Puerto Rico operations. In April 1987, still unable to get a response to its refund request, Atlas asked its accountants for advice as to how to obtain a refund of the credit the IRS had confirmed. The accountants recommended that Atlas simply apply its credit against its outstanding withholding tax liabilities, consistent with the instructions on its quarterly withholding tax returns. In April 1987, Atlas followed its accountants' advice: When filling out its withholding tax returns for the fourth quarter of 1986 and the first quarter of 1997, Atlas applied the purported tax credit plus statutory interest, which Atlas's calculated to total in excess of $173,000, toward its withholding liabilities, which it calculated to be $157,359.29.[2] Astro then used all of the proceeds from the sale of Atlas to pay creditors other than the IRS.
 
 
 10
 Over a year later, in May 1988, the IRS served Winter, Uribe, and the Romers with notice that, pursuant to 26 U.S.C. 6672(a), it intended to assess them a penalty of $93,592.97 for Atlas's failure to remit its withholding taxes during the last quarter of 1986 and the first quarter of 1987.[3] On May 31, 1988, Winter, Uribe, and the Romers protested the proposed penalty, explaining their belief that Atlas Guard had overpaid its withholding taxes in 1984 and that Atlas had properly applied this credit against its withholding tax liability in 1986 and 1987. On July 1, 1988, the IRS responded, stating that at the time Atlas filed the returns in question, it had "no credit available" from the first and second quarters of 1984. The IRS acknowledged that at one time Atlas's account had been improperly credited, but maintained that the overpayments had been reassigned to the correct account during the second half of 1984, thereby eliminating the credit in Atlas's account. The IRS did not contend that it had previously informed Atlas of the reassignment.
 
 
 11
 As promised, on January 31, 1990, the IRS assessed a $93,592.97 penalty against the Romers, Uribe, and Winter, jointly and severally. On May 9, 1991, the IRS abated the entire penalty assessed against Uribe, but did not abate the penalty assessed against the Romers or Winter. On March 25, 1993, Winter filed a claim with the IRS seeking abatement of the penalty assessed against him. On August 23, 1993, the IRS informed Winter that it would not consider his abatement claim, but would consider a refund claim if he chose to bring one after paying the full amount of the penalty.
 
 C. The Proceedings Below
 
 12
 On October 26, 1993, Winter sued the IRS, demanding, among other things, an abatement of the penalty assessed against him. Winter's complaint alleged that the statutory prerequisites for imposition of a penalty were unmet and that, in light of the government's decision to abate the penalty assessed against Uribe, the continued imposition of a penalty against him constituted illegal selective enforcement of the tax laws. On December 27, 1993, the government answered Winter's complaint and asserted counterclaims against Winter, Steven Romer, and Rita Romer (collectively, the "Counterclaim Defendants"), seeking to reduce to judgment the penalty assessed against them. In February 1994, Steven Romer and Rita Romer asserted third-party counterclaims against the government, parroting Winter's claims for an abatement of the $93,592.97 penalty.
 
 
 13
 On July 30, 1997, the Counterclaim Defendants moved for summary judgment on their claims and on the government's counterclaims. As an initial matter, both Rita Romer and Winter argued that the evidence showed that they were not the persons responsible for remitting Atlas's withholding taxes, and therefore could not be penalized under 26 U.S.C. 6672(a) for Atlas's failure to remit. Steven Romer conceded that he was such a "responsible person." All three Counterclaim Defendants argued that they did not act willfully in failing to remit withholding taxes another prerequisite for assessment of penalty under section 6672(a). Specifically, they pointed to evidence that, at the time it filed the relevant returns, Atlas had no knowledge that the IRS had misapplied Penn's remittances in 1984 and, as a result, reasonably believed that Atlas's withholding obligations for the last quarter of 1986 and the first quarter of 1987 had been more than satisfied by application of the existing tax credit.
 
 
 14
 On September 5, 1997, the government cross-moved for summary judgment on all of its counterclaims. In support of its motion, the government first argued that the undisputed evidence showed that Rita Romer and Winter were "responsible persons" within the meaning of section 6672(a). The government also argued that the Romers and Winter acted willfully as a matter of law when they failed to remit Atlas's withholding taxes for the last quarter of 1986 and the first quarter of 1987.
 
 
 15
 By a Memorandum and Order dated February 10, 1998, the district court granted the government's motion and denied the Counterclaim Defendants' motions. The court found that the Romers and Winter were all responsible for remitting Atlas's withholding taxes and that they acted willfully in failing to remit those taxes during the last quarter of 1986 and the first quarter of 1987. While the district court recognized the parties' dispute over the date on which the IRS prepared and forwarded the reconciliation sheets to Atlas, it found the dispute to be immaterial. On February 19, 1998, the district court entered judgement against each of the Counterclaim Defendants, jointly and severally, in the amount of $93,592.97, plus interest. The Counterclaim Defendants timely appealed.
 
 II. DISCUSSION
 
 16
 On appeal, the parties advance the same arguments they did below. Both Rita Romer and Winter argue that the district court erred in finding them to be responsible persons within the meaning of section 6672(a). All of the Counterclaim Defendants contend that the district court erred in finding that they acted willfully. In addition, the Counterclaim Defendants assert that the district court erred in dismissing their selective enforcement claims. The government, of course, argues that the district court should be affirmed in all respects. After setting forth the applicable legal standards, we address each argument in turn.
 
 A. Substantive Legal Standards
 
 17
 The Code requires employers to withhold income and FICA taxes from the wages of their employees. See 26 U.S.C. 3102(a) (FICA taxes), 3402 (income taxes). Section 7501(a) of the Code requires employers to remit these withholding taxes to the IRS, see 26 U.S.C. 7501(a), and IRS regulations require that these remittances be made on a quarterly basis. 26 C.F.R. 31.6011(a)-1 (FICA taxes), 31.6011(a)-4 (income taxes). If an employer withholds taxes from its employees' wages, but does not remit those taxes to the IRS, the government credits the employees with having paid their taxes and may not seek to collect the unremitted taxes from them. Slodov v. United States, 436 U.S. 238, 243 (1978); Fiataruolo v. United States, 8 F.3d 930, 938 (2d Cir. 1993). Instead, to protect the government from losses sustained by an employer's failure to remit withholding taxes, section 6672 of the Code allows the IRS to shift liability for the unremitted taxes from the employer to each individual responsible for the failure to remit:
 
 
 18
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to [sic] a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.
 
 
 19
 26 U.S.C. 6672(a).
 
 
 20
 Thus, under section 6672(a), an individual may be held liable for unpaid withholding taxes if: (1) he or she was a "responsible person" for collection and payment of the employer's taxes; and (2) he or she "willfully" failed to comply with section 7501(a). Fiataruolo, 8 F.3d at 938. "The person against whom the IRS assesses a 6672 tax penalty has the burden of disproving, by a preponderance of the evidence, the existence of one of these two elements." Id.
 
 1. Responsible Person
 
 21
 In determining whether an individual is a "responsible person" within the meaning of section 6672(a), "[t]he determinative question is whether the individual has significant control over the enterprise's finances." United States v. Rem, 38 F.3d 634, 642 (2d Cir. 1994) (internal quotations omitted). No single factor is dispositive in evaluating whether an individual has significant control; rather, the determination must be made in light of the totality of the circumstances. Id. The relevant circumstances include whether the individual:
 
 
 22
 (1) is an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and disbursement records, and (7) has check-signing authority.
 
 
 23
 Id. (quoting Fiataruolo, 8 F.3d at 939).
 
 
 24
 "[I]t is not necessary that the individual in question have the final word as to which creditors should be paid in order to be subject to liability under . . . section" 6672(a). Id. (internal quotations omitted). And while section 6672(a) is not meant to ensnare those who have mere "technical authority" or a "titular designation," the section encompasses all those individuals connected closely enough with the business to prevent the tax default from occurring. Id. As a result, "[m]ore than one individual may be a responsible person within the meaning of 6672(a)." Id.; see also Fiataruolo, 8 F.3d at 939 ("Significant control may be shared by several people within a company, all of whom may be found responsible for a tax delinquency.").
 
 2. Willfulness
 
 25
 Even a responsible person may not be held personally liable under section 6672(a) unless his or her failure to collect, account for, or remit withholding taxes was willful. 26 U.S.C. 6672(a). In order to satisfy the willfulness requirement, a responsible person need not act out of an evil motive or an intent to defraud. Rem, 38 F.3d at 643. Instead, "[t]he principal component of willfulness is knowledge: a responsible person acted willfully within the meaning of 6672(a) if he (a) knew of the company's obligation to pay withholding taxes, and (b) knew that company funds were being used for other purposes instead." Id. Thus, failures are willful within the meaning of section 6672(a) if they are "'voluntary, conscious and intentional as opposed to accidental decisions not to remit funds properly withheld to the Government.'" Kalb v. United States, 505 F.2d 506, 511 (2d Cir. 1974) (quoting Monday v. United States, 421 F.2d 1210, 1216 (7th Cir. 1970)). "Willful conduct may also include a 'reckless disregard for obvious and known risks' as well as a 'failure to investigate . . . after having notice that withholding taxes have not been remitted to the Government.'" United States v. Landau, 155 F.3d 93, 101 (2d Cir. 1998) (quoting Kalb, 505 F.2d at 511).
 
 
 26
 That said, this Circuit recognizes a so-called "reasonable cause" exception to section 6672(a) liability: "[A] responsible person's failure to cause the withholding taxes to be paid is not willful if he [or she] believed that the taxes were in fact being paid, so long as that belief was, in the circumstances, a reasonable one." Rem, 38 F.3d at 643 (citing Kalb, 505 F.2d at 511). However, even if a responsible person did not know contemporaneously of the company's nonpayment of withholding taxes, he or she will be held liable for any nonpayment if, when he or she became aware of the delinquency, the company had liquid assets with which to pay the overdue taxes. Id.
 
 B. Summary Judgment Principles
 
 27
 The Romers and Winter appeal from the district court's order granting the government's motion for summary judgment. They also appeal the district court's denial of their motions for summary judgment. We review both of the district court's decisions de novo. National Awareness Found. v. Abrams, 50 F.3d 1159, 1164 (2d Cir. 1995).
 
 
 28
 Summary judgment may be granted only if there is no genuine issue of material fact to be tried and the moving party is therefore entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). When determining whether there is a genuine issue of fact to be tried, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In the context of a section 6672(a) dispute, then, summary judgment is appropriate where there are no genuine questions as to the assessed individual's control of company funds and decisionmaking authority, his or her knowledge of the deflection of company funds to payees other than the IRS, or the existence or reasonableness of his or her belief that the taxes were, in fact, being paid. See Rem, 38 F.3d at 644.
 
 
 29
 C. Rita Romer's Status as a Responsible Person
 
 
 30
 Applying these standards, the district court erred in concluding as a matter of law that Rita Romer was a responsible person within the meaning of section 6672(a). While the government did introduce uncontroverted evidence that Rita Romer was an officer, director, and shareholder of Atlas, she introduced evidence that she held her ownership interest and her titles merely as a convenience to her husband, who exercised effective control over her interest in the company. And although the government introduced evidence that Rita Romer had check-signing authority, she introduced evidence that she had virtually no power to sign a check without the knowledge or consent of either Steven Romer or Uribe. Finally, the government set forth evidence showing that Rita Romer was involved in important decisions regarding Atlas's operation, but she introduced evidence that she had no decisionmaking authority over Atlas's affairs, financial or otherwise.
 
 
 31
 As noted above, section 6672(a) was not intended to apply to an individual who lacks actual control over an employer's finances, even though he or she has technical authority by virtue of title or ownership interest. See Fiataruolo, 8 F.3d at 939. Although Rita Romer's ownership interest, titles, and check-writing authority indicate that she may have been a responsible person, other evidence tends to show that she may have exercised little actual control over Atlas's purse strings. Thus, indulging all reasonable inferences in favor of Rita Romer, there exists a genuine issue of fact as to whether she exercised "significant control" over Atlas's finances or merely enjoyed a "titular designation" at the company. See Rem, 38 F.3d at 644 (question of fact existed as to titular designation where party was officer, director, and 20% owner of the company but evidence suggested that another individual effectively controlled his actions). Thus, the district court erred in finding that Rita Romer was a responsible party as a matter of law. See id. at 645.
 
 
 32
 While the district court erred in granting summary judgment in favor of the government, it did not err in denying Rita Romer's motion. When the evidence is viewed in the light most favorable to the government, these same genuine issues of fact exist and preclude a finding that Romer was not a responsible party as a matter of law.
 
 D. Winter's Status as a Responsible Person
 
 33
 The same conflicting evidence does not mark the government's claim that Winter was a responsible person within the meaning of section 6672(a). Winter admitted that, in his position as controller of Atlas, he was responsible for the "total overview" of Atlas's finances and oversaw accounts payable, accounts receivable, payroll, and tax compliance. Indeed, as part of his responsibilities for tax compliance, Winter prepared and signed the withholding tax returns that are at issue here. In light of these admissions, Winter's further contentions that he "was never in a position of 'control'" of company funds, possessed "no decision-making, management or hiring and firing authority," and that Steven Romer directed him to apply the credit against Atlas's tax liabilities, can only be viewed as an argument that he did not have ultimate authority over whether the withholding taxes would be paid. As we stated in Rem, an individual need not have the "final word" in order to be found a responsible person under section 6672(a). Rem, 38 F.3d at 642; see also Hochstein v. United States, 900 F.2d 543, 547 (2d Cir. 1990). He or she need only have "significant control" over the taxpayer's finances. See Rem, 38 F.3d at 642. Given Winter's admission that he was responsible for Atlas's financial affairs, including tax compliance, the district court did not err in finding as a matter of law that he was a responsible person under section 6672(a). See Hochstein, 900 F.2d at 547-48 (controller responsible for employer's financial affairs, including tax compliance, was a responsible person despite lack of final authority as to which creditors were to be paid).
 
 E. The Counterclaim Defendants' Willfulness
 
 34
 As their penultimate argument, the Counterclaim Defendants contend that they did not act willfully in failing to remit Atlas's withholding taxes. The question of willfulness in this context is normally one of fact. Hochstein, 900 F.2d at 548. Therefore, a court may determine a party's willfulness as a matter of law only when the facts are undisputed and application of the law to those facts will reasonably support only one ultimate conclusion. Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 437-38 (2d Cir. 1999). Of course, in determining whether genuine disputes of fact exist, we must view the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.
 
 
 35
 In arguing that they did not act willfully within the meaning of section 6672(a), the Counterclaim Defendants do not contend that they had no knowledge of Atlas's obligation to remit withholding taxes. Nor do they assert that they lacked knowledge that Astro's remaining funds were used to pay creditors other than the IRS. Instead, they argue that they reasonably believed that Atlas had satisfied its tax obligations through application of credits from prior quarters. In support of this argument, they point to evidence which, if credited, demonstrates that: (1) in 1985, Servisco represented to Astro that Atlas Guard had a tax credit of over $114,000 and that Penn was current in its withholding obligations; (2) prior to June 1988, the IRS did not act on Atlas's longstanding claim for a refund, despite Atlas's repeated requests that it do so; (3) in fact, the IRS confirmed the existence of the credit when, in September 1986, it sent Atlas reconciliation worksheets indicating that Atlas Guard had overpaid its withholding taxes by over $114,000 in 1984; (4) relying on this representation, Atlas applied the credit against its withholding liability for the last quarter of 1986 and the first quarter of 1987, consistent with the instructions on its Employer's Quarterly Federal Tax Return Form 941; but (5) it was not until July 1988 that the IRS first informed the Counterclaim Defendants that the credit did not exist, and by that time Astro had used all of the proceeds of the sale of Atlas to pay other creditors.
 
 
 36
 The government, in turn, does not take issue with the assertions that the IRS credited Atlas Guard's account in 1984, confirmed the existence of that credit, and failed to inform Atlas of either mistake until July 1988. Nor does the government dispute that, had the credit actually existed, Atlas would have been within its rights in applying the credit to its withholding tax liabilities for the last quarter of 1986 and the first quarter of 1987. In fact, at oral argument, the government conceded that "there is no question" that Atlas could have satisfied its liabilities by applying any credit that was actually in its account. Instead, the government first argues that Atlas did not actually believe that its taxes were being paid. In addition, the government contends that any such belief would have been unreasonable as a matter of law.[4] Thus, the argument continues, the reasonable cause exception is inapplicable here.
 
 
 37
 In support of its argument that the Counterclaim Defendants did not actually believe that Atlas's withholding taxes were being paid, the government relies primarily on the deposition testimony of Steven Romer. In his deposition, Romer explained why Atlas applied the credit rather than waiting for a refund:
 
 
 38
 The only thing we could assume is that the IRS, which happens to fly around like a dukey bird until it flies up its own backside, had somehow gotten into its head it's not going to pay us this money.
 
 
 39
 So the doctrine of self-help said we were in every way, shape and form entitled to apply . . . what was rightfully ours, to an indebtedness to the IRS and we did that.
 
 
 40
 Viewed in the light most favorable to the government, Romer's deposition statement can be taken as an admission that the Counterclaim Defendants knew that the IRS had determined that Atlas had no credit and was due no refund, but that Atlas nonetheless decided to apply the nonexistent credit against its tax liabilities. As a result, a reasonable factfinder could conclude, as the government contends, that Atlas did not believe that its withholding taxes were being paid.
 
 
 41
 On the other hand, viewing this and all of the other evidence in the light most favorable to the Counterclaim Defendants, and drawing all reasonable inferences in their favor, Steven Romer's statement must be read not as an admission that Atlas knew that the taxes were not being paid, but as an expression of Atlas's intent to use lawful means to receive a credit that the IRS had acknowledged as late as September 1986, but, for unknown reasons apart from the validity of the credit, had not yet refunded. In short, a reasonable factfinder could also conclude, as the Counterclaim Defendants contend, that Atlas did believe that its taxes were being paid. If a material factual issue "may reasonably be resolved in favor of either party," a court may not grant summary judgment. Anderson, 477 U.S. at 250-51; see also Richardson, 180 F.3d at 437-38. Thus, the district court erred in finding as a matter of law that Atlas did not believe that its taxes were, in fact, being paid.
 
 
 42
 In its final argument in support of the district court's willfulness finding, the government relies on Kalb, 505 F.2d at 506, for the proposition that even if the Counterclaim Defendants did believe that Atlas's taxes were being paid, that belief was still unreasonable as a matter of law. In Kalb, the responsible persons requested the IRS to apply their employer's overpayment of income taxes to reduce its withholding tax liability. Kalb, 505 F.2d at 509. The IRS refused to honor their request, the withholding taxes went unpaid, and the IRS assessed a penalty against the responsible persons pursuant to section 6672(a). Id. The responsible persons argued that they did not willfully fail to remit withholding taxes because they reasonably believed that the IRS would apply their employer's income tax overpayment against its withholding tax liability. Id. We declined to apply the reasonable cause exception, finding that the employer did not have the power to direct the IRS to apply its previous overpayment against its current liability, id. at 509, and that the IRS "at no time indicated that the overpayment would be [so] applied," id. at 510.
 
 
 43
 Here, in stark contrast to Kalb, the government conceded at oral argument that "there is no question" that Atlas could have applied any existing withholding tax credit against its withholding tax liabilities. Moreover, the government does not dispute Atlas's contention that the IRS actually, if erroneously, confirmed the existence and the amount of the credit. Instead, the government only disputes the date on which the IRS forwarded this confirmation to Atlas, asserting that the IRS prepared and sent Atlas the reconciliation forms in the summer of 1984, rather than September 1986. The district court found this dispute to be immaterial to the outcome of the case. We disagree.
 
 
 44
 "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. If, as Atlas claims, the IRS confirmed the existence and amount of the credit as late as September 1986 only weeks before the final quarter of 1986 began this fact militates strongly in favor of a finding that Atlas acted reasonably when, just months later, it applied that credit to fulfill its withholding obligations for the last quarter of 1986 and the first quarter of 1987. But if, as the government contends, the IRS prepared and issued the reconciliation sheets as early as the summer of 1984 but then failed to grant Atlas's requested refund for nearly three years, the reconciliation sheets provide significantly less support for the proposition that Atlas acted reasonably in applying the credit without further investigating the source of the IRS's delay. See Landau, 155 F.3d at 101 (willful conduct may include reckless disregard for obvious or known risks). Because resolution of this dispute might affect the outcome of the factfinder's reasonableness determination, the district court erred in finding it immaterial. See Anderson, 477 U.S. at 248.
 
 
 45
 In sum, the evidence introduced by the parties on the question of willfulness is conflicting and susceptible of at least two reasonable interpretations. As a result, the district court erred in finding as a matter of law that the Counterclaim Defendants acted willfully as required by section 6672(a). By the same token, the district court did not err in declining the Counterclaim Defendants' invitation to find their actions not willful as a matter of law.
 
 F. Selective Enforcement Claims
 
 46
 By entering judgment against the Counterclaim Defendants, the district court implicitly rejected their charge that the IRS engaged in prohibited selective enforcement when it abated only the section 6672(a) penalty originally assessed against Uribe. In their final argument, the Counterclaim Defendants reiterate their contention that they are entitled to an abatement of the penalty as a remedy for this alleged selective enforcement.
 
 
 47
 Although the IRS may collect a section 6672(a) penalty against any responsible person who willfully failed to remit withholding taxes, see Calderone v. United States, 799 F.2d 254, 258 (6th Cir. 1986), it may not utilize invidious or legally impermissible criteria in singling out those responsible persons from whom it will collect, see St. German of Alaska E. Orthodox Catholic Church v. United States, 840 F.2d 1087, 1095 (2d Cir. 1988) (discussing claim of selective IRS investigation). Here, the Counterclaim Defendants have made no allegations and introduced no evidence that the IRS utilized invidious criteria when it abated the penalty originally assessed against Uribe but declined to abate the penalty against them. The district court was therefore correct in declining to abate the penalty against the Counterclaim Defendants on the basis of the alleged selective enforcement.
 
 III. CONCLUSION
 
 48
 The district court did not err in concluding as a matter of law that Winter was a responsible person under section 6672(a) or in declining to abate the penalty against the Counterclaim Defendants on the basis of alleged selective enforcement. However, the district court did err in finding no genuine disputes of material fact as to Rita Romer's status as a responsible person and as to the willfulness of the Counterclaim Defendants' failure to remit. Therefore, we affirm that portion of the district court's order denying the Counterclaim Defendant's motion for summary judgment, reverse and vacate that portion of the order granting summary judgment in favor of the government, and remand for further proceedings. See Commander Oil Corp. v. Advance Food Serv. Equip., 991 F.2d 49, 55 (2d Cir. 1993). No costs are awarded to either party.
 
 
 
 Notes:
 
 
 [1]
 As discussed more fully in section II.E. below, Atlas contends that the IRS prepared the reconciliation sheets in September 1986, after performing the audit of Atlas's books. The government contends that the IRS prepared the reconciliation sheets sometime in 1984.
 
 
 [2]
 The IRS later calculated Atlas's withholding tax liability for these two quarters to be $ 168,716.05.
 
 
 [3]
 The IRS also assessed a penalty of $ 486.74 as a result of Atlas's underpayment of taxes for the third quarter of 1986. That penalty is not a subject of this litigation. The record does not reveal, and the parties have not explained, why the IRS assessed a penalty in an amount less than Atlas's outstanding withholding tax liability.
 
 
 [4]
 Finally, in an argument alluded to in its brief, and developed more fully only at oral argument, the government contends that because Atlas was acting as a trustee of its employees' taxes, see United States v. Landau, 155 F.3d 93, 106 (2d Cir. 1998), the Counterclaim Defendants had a fiduciary duty to place sufficient funds in escrow pending final resolution of Atlas's refund request. This argument finds no support in out caselaw, which allows a responsible person to avoid section 6672(a) liability as long as he or she held a reasonable belief that the withholding taxes were, in fact, being paid. Rem, 38 F.3d at 643. Application of this reasonable cause exception requires no more. Id. Moreover, the government's argument is contradicted by its concession that Atlas would have been justified in simply applying its purported credit against its liabilities if the credit had in fact existed, regardless of the fact that the IRS had not yet issued the requested refund.