T.C. Memo. 2015-112

UNITED STATES TAX COURT

IFEANYI OBIAKOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28466-13L.                        Filed June 18, 2015.

P was an officer and responsible person of C, which failed to pay its employment taxes for several calendar quarters. R mailed P a notice of intent to assess trust fund recovery penalties pursuant to I.R.C. sec. 6672, but P did not receive such notice. R then assessed the penalties. P did not satisfy them, and R issued a final notice of intent to levy. P filed a request for an administrative hearing. R's settlement officer ultimately sustained the proposed levy. P then filed a petition for judicial review, challenging the underlying liabilities and alleging abuse of discretion by the settlement officer. In due course the case was submitted for decision fully stipulated under Rule 122, Tax Court Rules of Practice and Procedure.

Held: P is liable for the trust fund recovery penalties. See Rules 122(b), 142(a), Tax Court Rules of Practice and Procedure.

Held, further, R's determination to proceed with the levy is sustained in the absence of abuse of discretion by the settlement officer.

[*2]   Gregory J. Brosnan, for petitioner.

Sze Wan Florence Char, for respondent.

MEMORANDUM OPINION

ARMEN, Special Trial Judge:  This case is before the Court on a petition

for review of a Notice Of Determination Concerning Collection Action(s) Under

Section 6320 and/or 6330 (notice of determination).[1]  Petitioner seeks review of

respondent's determination to proceed with a proposed levy to collect trust fund

recovery penalties (TFRPs) assessed pursuant to section 6672 for the four calendar

quarters ended December 31, 2006, and March 31, June 30, and December 31,

2007 (taxable periods in issue).

The issues for decision are as follows:  (1) Whether petitioner is entitled to

challenge the existence or amount of the underlying liabilities, and, if so, the

existence or amount of those liabilities; (2) whether the settlement officer of the

Internal Revenue Service (IRS) Appeals Office abused her discretion by not

allowing a collection alternative, by the manner in which the administrative

---

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code, as amended and in effect at all relevant times.  All Rule references
are to the Tax Court Rules of Practice and Procedure.

**[*3]** hearing was conducted, or otherwise; and (3) whether collection of petitioner's outstanding liabilities would create an undue hardship. As discussed below, we resolve these issues in a way that permits respondent's proposed collection action to proceed.

This case was submitted fully stipulated under Rule 122, and the stipulated facts are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

<u>Background</u>

Petitioner resided in the State of New York at the time that the petition was filed.

Petitioner is a physician and has been in practice for over 20 years. He graduated from the St. Louis University School of Medicine, is board certified in obstetrics and gynecology, and is affiliated with New York Methodist Hospital.

During the taxable periods in issue petitioner was one of two members, as well as an officer, of Chunel Management Services Organization LLC (Chunel). Chunel is an entity that is part of a state-of-the-art medical practice that operates a multi-specialty medical facility in Brooklyn, New York.

**[*4]** Chunel incurred, but failed to pay, employment taxes for the taxable periods in issue. Petitioner concedes that he was a responsible person for the trust fund portion of those taxes during those periods. See sec. 6672.

In February 2009 respondent sent petitioner a preliminary notice (section 6672(b) notice) of respondent's intent to assess TFRPs. The section 6672(b) notice, which was in the form of standard Letter 1153, Trust Funds Recovery Penalty Letter, notified petitioner of respondent's intent to assess TFRPs pursuant to section 6672 relating to the trust fund portion of Chunel's employment taxes for the taxable periods in issue. The Letter 1153 further stated that petitioner could request a hearing with the IRS Appeals Office and administratively challenge the proposed TFRPs.

The Letter 1153 was properly sent to petitioner by certified mail at his last known address. Inexplicably, it was returned to respondent in March 2009 as "undeliverable".

Chunel's employment tax liabilities for the taxable periods in issue remained unpaid. Accordingly, in June 2009 respondent assessed TFRPs against petitioner for those periods and sent him notice and demand for payment. See sec. 6303.

[*5] <u>Respondent's Efforts To Collect Petitioner's TFRP Liabilities</u>

On March 15, 2013, respondent sent petitioner a Final Notice/Notice Of Intent To Levy And Notice Of Your Right To A Hearing regarding his TFRP liabilities for the taxable periods in issue. <u>See</u> sec. 6330(a). In response, petitioner timely filed a Form 12153, Request For A Collection Due Process Or Equivalent Hearing.[2] Therein, petitioner stated that he sought a collection alternative, checking the boxes for "installment agreement" and "cannot pay balance". In addition, petitioner included with the Form 12153 an addendum that stated as follows:

> The taxpayer is currently facing significant economic hardships, which is why they have not been able to pay their taxes. Taxpayer's business has significantly deteriorated due to the current economic climate.

> There are substantial questions as to the proper calculation of the penalties assessed. We would like to propose a different way to pay the outstanding balance owed, such as an installment agreement or offer in compromise.

---

[2] The Form 12153 was signed and submitted by petitioner's authorized representative, an attorney, who continued to represent petitioner throughout the administrative phase of this case (and who, coincidentally, is also admitted to practice before this Court). A second attorney, but from the same law firm as the first, later subscribed the petition that commenced the judicial phase of this case, and that second attorney continues to represent petitioner. In short, petitioner has been represented by counsel at all relevant times.

**[*6]**   In response to the Form 12153, the assigned Appeals settlement officer (SO) sent petitioner a letter dated June 28, 2013.  Among other things, the SO scheduled a telephone conference call for July 25, 2013, and explained that petitioner could at that time discuss collection alternatives, challenge the appropriateness of the proposed collection action, and contest the amount owed "but only if you have not otherwise had an opportunity to dispute it with Appeals or did not receive a statutory notice of deficiency."  The SO also stated that for her to consider collection alternatives, "you must have filed all federal tax returns required to be filed" and provide a variety of specified documents, including a completed Form 433-A, Collection Information Statement For Wage Earners And Self-Employed Individuals, and signed tax returns for calendar years for which returns had not been filed.  The SO further stated that respondent's records indicated that petitioner had failed to file Forms 1040, U.S. Individual Income Tax Return, for 2006 through 2012.  The SO also asked petitioner to "[p]lease send me the items requested * * * within 14 days from the date of this letter [as] I cannot consider collection alternatives at your conference without this information."

Petitioner failed to provide any of the documents requested by the SO in her June 28, 2013 letter by the deadline and did not request an extension of time to do so.

**[\*7]**  On July 24, 2013, the day before the scheduled telephone conference, the SO received by facsimile a Form 433-A, together with three bills from various utility and other service providers.  Although the Form 433-A was signed, it was incomplete.  For example, the section for monthly household income was blank, whereas the section for monthly household expenses listed specific items totaling $5,535.  Further, although the Form 433-A acknowledged both personal and business checking accounts with JP Morgan Chase, no account numbers or balances were provided.  In addition, the Form 433-A listed only one tangible asset, a 2010 Mercedes GL450 with a current market value of $35,000 and no loan balance.

Telephone Hearing

As agreed, the hearing was conducted by telephone on July 25, 2013.  During the hearing the SO inquired whether petitioner wished to submit an offer-in-compromise as a collection alternative.  Although petitioner did not propose either an installment agreement or an offer-in-compromise, his counsel stated that petitioner was considering doing so and was also contemplating filing for bankruptcy.[3]  At the end of the hearing the SO requested a number of documents,

---

[3] The Court has not been notified by either party that petitioner has at any time filed a petition in bankruptcy so as to require a stay of proceedings in the
(continued...)

**[*8]** including copies of relevant bank records, and specified August 15, 2013, as the deadline.

Also on July 25, 2013, but after the telephone hearing had concluded, the SO received by mail unsigned income tax returns for 2006 through 2011 and a Form 4868, Application For Automatic Extension Of Time To File U.S. Individual Tax Return, for 2012.  The SO advised petitioner's representative by telephone that the returns could not be processed because they were unsigned.  Thereafter, signed copies of the returns for 2006 and 2007, the calendar years coinciding with the taxable periods in issue, were provided.

Subsequent Communications

The parties continued to communicate, generally by facsimile.  Thus, on August 15, 2013, petitioner's representative sent the SO bank statements for April, May, and June 2013 for one of petitioner's bank accounts.

In September 2013 the SO reviewed available documents, analyzed income and expense, and prepared an Income And Expense Table (the Table).  The Table reflected that petitioner's total monthly income was $14,721; the Table also reflected that petitioner's total monthly expenses were $6,442, an amount greater

[3](...continued)
instant case.  See 11 U.S.C. sec. 362 (2012).

**[\*9]** than that listed by petitioner on his Form 433-A (i.e., $5,535). Thus, the

Table reflected monthly disposable income of $8,279 (i.e., $14,721 minus $6,442).

On September 12, 2013, the SO faxed the Table with explanation to

petitioner's representative and stated:

> If you wish a collection alternative or want to supply additional
> documentation please respond by September 26, 2013.
>
> No response will result in closing case and sustaining the collection
> action.
>
> Petitioner did not respond to the Table, nor did he provide additional

documents.

At no time during the administrative phase of this case did petitioner present

to the SO any specific proposal for either an installment agreement or an offer-in-

compromise. Further, at no time during the administrative phase of this case did

petitioner expressly address, by way of argument or documentation, what he had

characterized in the addendum to his Form 12153 as "substantial questions as to

the proper calculation of the penalties assessed."

Notice of Determination and the Judicial Case

On November 6, 2013, the IRS New York Appeals Office sent to petitioner

a Notice Of Determination Concerning Collection Action(s) Under Section 6320

**[\*10]** and/or 6330 (notice of determination), sustaining the proposed levy. The

Attachment to the notice of determination included the following:

> During CDP [Collection Due Process, i.e., the administrative hearing]
> a liability may be raised * * * provided that a taxpayer did not:
>
> • Receive a notice of deficiency or
> • Sign a consent to assessment or
> • Have a prior opportunity to dispute the tax liability.
>
> The Letter 1153 allowed the taxpayer the opportunity to dispute the
> tax liability which prohibited the liability issue to be raised during the
> CDP hearing.
>
> In response to the notice of determination, petitioner appealed to this Court.

See sec. 6330(d)(1).

In his petition, as well as in subsequent filings, petitioner has alleged that

"[t]he I.R.S. has not applied all credits and adjustments as required by law and has

improperly calculated interest and penalties and interest on penalties." Petitioner

has also alleged that the SO abused her discretion by not considering collection

alternatives and by imposing "artificially short time frames for document

production and responses to complex issues".

**[\*11]** On brief petitioner argues that "there are a plethora of genuine issues of fact that warrant denial of Respondent's motion" and that the Court should "at a minimum" remand this case to the IRS Appeals Office "for a proper review."[4]

## Discussion

### I. Burden of Proof

Generally, the burden of proof in cases before this Court is on the taxpayer. Rule 142(a); see sec. 7453. Section 7491(a), which shifts the burden of proof to the Commissioner under certain circumstances, is inapplicable in TFRP cases. Mason v. Commissioner, 132 T.C. 301, 323 (2009).

As previously stated, this case was submitted to the Court by the parties fully stipulated under Rule 122. Paragraph (b) of that Rule deals with burden of proof and states: "The fact of submission of a case, under paragraph (a) of this Rule, does not alter the burden of proof, or the requirements otherwise applicable with respect to adducing proof, or the effect of failure of proof." See Rule 142(a); Titsworth v. Commissioner, T.C. Memo. 2012-12, 2012 WL 86670, at \*6. Accordingly, petitioner bears the burden of proof.

---

[4] Earlier in the history of this case respondent filed a motion for summary judgment, but it was denied by the Court in October 2014. The case is now before the Court fully stipulated pursuant to Rule 122. In short, there is no pending motion.

**[\*12]** II.  <u>Administrative Hearings Under Section 6330 and Judicial Review</u>

Section 6331(a) authorizes the Commissioner to levy upon property and rights to property of a taxpayer who is liable for taxes and who fails to pay those taxes within 10 days after notice and demand for payment is made.  Section 6331(d) provides that the levy authorized in section 6331(a) may be made only if the Commissioner has given notice to the taxpayer no less than 30 days before the day of the levy.

Section 6330(a) reiterates the requirement of notice before levy and confers on the taxpayer the right to request a prelevy administrative hearing.  Sec. 6330(a)(3)(B), (b); see <u>Davis v. Commissioner</u>, 115 T.C. 35, 37 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 179 (2000).  If such a hearing is requested, the hearing is to be conducted by the IRS Appeals Office.  Sec. 6330(b)(1).

At a section 6330 hearing the taxpayer may raise any relevant issue, specifically including offers of collection alternatives, such as an installment agreement or an offer-in-compromise.  Sec. 6330(c)(2)(A)(iii).  A taxpayer may also challenge the existence or amount of the underlying tax liability but only if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability.  Sec. 6330(c)(2)(B).

**[\*13]** A determination made by the IRS Appeals Office under section 6330 to sustain a proposed levy and proceed with collection may be reviewed by this Court. Sec. 6330(d)(1); see Rules 330-334. Where the underlying tax liability is properly at issue, we review the determination de novo. Goza v. Commissioner, 114 T.C. at 181-182. Where the underlying tax liability is not at issue we review the determination for abuse of discretion. Id. at 182; see also Sego v. Commissioner, 114 T.C. 604, 610 (2000).

III. Trust Fund Recovery Penalties

A. In General

An employer is required to withhold various taxes from an employee's wages and then pay over to the Commissioner the withheld income tax, see secs. 3402(a)(1), 3403, the employee's share of Social Security tax, see secs. 3101(a), 3201(a), and Medicare tax, see secs. 3101(b)(1), 3201(a). The withheld taxes are "held to be a special fund in trust for the United States." Sec. 7501(a). As a result, they are known as "trust fund taxes". See Slodov v. United States, 436 U.S. 238, 241 (1978); see also Pollock v. Commissioner, 132 T.C. 21, 25 n.10 (2009).

One of the means of ensuring that trust fund taxes are collected and paid over to the Government is section 6672. See United States v. Rem, 38 F.3d 634 (2d Cir. 1994); Purcell v. United States, 1 F.3d 932, 936 (9th Cir. 1993). Section

**[*14]** 6672(a) provides that any person required to collect, truthfully account for, and pay over any tax who willfully fails to do so is liable for a TFRP. Fiataruolo v. United States, 8 F.3d 930, 938 (2d Cir. 1993). The Commissioner is authorized to impose a TFRP on any "officer or employee of a corporation, or a member or employee of a partnership who as such officer, employee, or member is under a duty to perform" the duties referred to in section 6672. Sec. 6671(b); Winter v. United States, 196 F.3d 339, 344-345 (2d Cir. 1999); Conway v. Commissioner, 137 T.C. 209, 214 (2011), aff'd sub nom. Nakano v. Commissioner, 552 Fed. Appx. 724 (9th Cir. 2014).

B. Assessment of TFRPs

Where an assessment to be made against a taxpayer is a TFRP, the Commissioner does not issue or mail a notice of deficiency. See sec. 6212(a). Rather, before a TFRP may be assessed, the Commissioner must mail a section 6672(b) notice, such as standard Letter 1153, to the responsible person at such person's last known address notifying him or her that a TFRP may be assessed. Sec. 6672(b)(1). This letter provides a taxpayer with the requisite notice and a means of protesting the proposed TFRP by administratively appealing to the IRS Appeals Office. Mason v. Commissioner, 132 T.C. at 317-318, 322; Giaquinto v.

**[\*15]** Commissioner, T.C. Memo. 2013-150; Lepore v. Commissioner, T.C. Memo. 2013-135.

If the person timely protests the proposed assessment, the period for assessing the TFRP does not expire before "the date 30 days after the Secretary makes a final administrative determination with respect to such protest." Sec. 6672(b)(3)(B). If the person fails to protest, or after a timely protest and the making of a final determination, the Commissioner may assess the TFRP. A TFRP is assessed and collected in the same manner as tax. Sec. 6671(a).

The Court has held that the mailing of a section 6672(b) notice to a taxpayer at the taxpayer's last known address is sufficient to satisfy the notification requirements of section 6672(b)(1) even if such notice is not received by the taxpayer. See Hickey v. Commissioner, T.C. Memo. 2009-2. In the instant case, respondent's issuance of the Letter 1153 by certified mail, which was properly sent to petitioner at his last known address, satisfies this requirement. See Mason v. Commissioner, 132 T.C. at 322-323. Thus, the TFRP assessments against petitioner are valid.

C. Post-assessment Challenges to TFRPs

The receipt of a Letter 1153 by a taxpayer constitutes an opportunity to dispute the taxpayer's liability within the meaning of section 6330(c)(2)(B). See

[*16] <u>Lengua v. Commissioner</u>, T.C. Memo. 2013-197, at *8. On the other hand, a Letter 1153 that was not received, but was not deliberately refused, by a taxpayer does not constitute an opportunity to dispute the taxpayer's liability. See <u>Mason v. Commissioner</u>, 132 T.C. at 317-318.

On February 25, 2009, respondent properly sent by certified mail a Letter 1153 to petitioner at his last known address notifying him of respondent's intent to assess TFRPs for the taxable periods in issue. For some inexplicable reason, the Letter 1153 was returned to respondent as "undeliverable". Respondent does not argue, and there is nothing in the record to suggest, that petitioner refused or deliberately failed to claim the letter. See <u>Morris v. Commissioner</u>, T.C. Memo. 2012-217; <u>Swanton v. Commissioner</u>, T.C. Memo. 2010-140. Accordingly, the Court concludes that petitioner did not have a prior opportunity to challenge the underlying liabilities, <u>see</u> <u>Mason v. Commissioner</u>, 132 T.C. at 317-318, and was therefore not barred from doing so during the administrative phase of this case.

In the addendum to his Form 12153 petitioner alleged that "[t]here are substantial questions as to the proper calculation of the penalties assessed", which allegation is arguably a challenge to the existence or amount of his underlying liabilities. However, at no time during the administrative phase of this case did petitioner expressly address such "substantial questions", either by way of

[*17] argument or documentation.  The relevant regulation and case law make clear that if a taxpayer fails to challenge the existence or amount of the taxpayer's underlying liabilities during the administrative phase of a case, the taxpayer may not do so upon appeal of a notice of determination to this Court.  See Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see also Ligman v. Commissioner. T.C. Memo. 2015-79, at *6.

On the other hand, the SO appears to have been under the erroneous impression that petitioner was barred from challenging the existence or amount of the underlying liabilities simply because of the issuance of the Letter 1153, even though petitioner did not receive it.  It is possible (although petitioner does not expressly argue the point) that petitioner was therefore prejudiced by the SO's closing her mind to the issue.  Accordingly, although the record includes no evidence of any attempted proffer by petitioner regarding the liability issue, and although he was at all times represented by counsel, we shall for the sake of expediency proceed on the basis that he was prejudiced by the SO's mistake of law such that he is not barred in the judicial proceeding from raising the liability issue.[5]  See Mason v. Commissioner, 132 T.C. at 320-321.

---

[5] Were we to conclude that petitioner had in fact been prejudiced by the SO's mistake of law, remand of this case to the IRS Appeals Office for

(continued...)

**[*18]** D. <u>Underlying Liabilities</u>

A responsible person will be held liable for a TFRP only when the failure to collect and pay over withholding tax was willful. Sec. 6672(a); <u>Kalb v. United States</u>, 505 F.2d 506, 511 (2d Cir. 1974); <u>Mason v. Commissioner</u>, 132 T.C. at 324. A "willful" failure means "a voluntary, conscious and intentional failure to collect, truthfully account for, and pay over the taxes withheld from the employees." <u>Mason v. Commissioner</u>, 132 T.C. at 324-325; <u>see also</u> <u>Winter v. United States</u>, 196 F.3d at 345; <u>Kalb v. United States</u>, 505 F.2d at 511. If a person is a "responsible person", then the burden is on that person to disprove willfulness. <u>Malloy v. United States</u>, 17 F.3d 329, 331 (11th Cir. 1994); <u>Hochstein v. United States</u>, 900 F.2d 543, 548 (2d Cir. 1990); <u>Romano-Murphy v. Commissioner</u>, T.C. Memo. 2012-330.

In the instant case, petitioner concedes that he was a responsible person for the trust fund portion of Chunel's employment taxes for the taxable periods in

---

[5](...continued)
consideration of the liability issue would serve no useful purpose because, as discussed above, the Court reviews de novo a taxpayer's underlying tax liability when such liability is properly at issue. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Clearly, petitioner had the opportunity of making a record and arguing the liability issue in the judicial phase of this case. We therefore proceed in accordance with the submission of this case by the parties under Rule 122 and decide the merits of the issue on the record before us.

[*19] issue. Notably, petitioner does not expressly argue that his failure to collect and pay over the employment taxes was not willful within the meaning of section 6672, and the record before us does not permit a finding that his failure was not willful.

Certain Courts of Appeals recognize a very limited "reasonable cause" exception that may allow a taxpayer to overcome willfulness and thereby avoid liability for a trust fund penalty. See Winter v. United States, 196 F.3d at 345; Logal v. United States, 195 F.3d 229, 233 (5th Cir. 1999); Newsome v. United States, 431 F.2d 742, 746-747 (5th Cir. 1970). The Court of Appeals for the Second Circuit, to which an appeal would lie absent a stipulation to the contrary, see Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.3d 985 (10th Cir. 1971), recognizes such an exception, see Winter v. United States, 196 F.3d at 345; United States v. Rem, 38 F.3d at 643; Kalb v. United States, 505 F.2d at 509, 511. Thus, reasonable cause is sufficient to excuse a responsible person's failure to pay over withholding taxes if such person believed that the taxes were in fact being paid, so long as that belief was, under the circumstances, a reasonable one. Winter v. United States, 196 F.3d at 345; United States v. Rem, 38 F.3d at 643. Petitioner has not made any argument that this exception applies, and again the record before us does not permit a finding that it does.

**[*20]** Finally, to the extent that petitioner may suggest that he is not liable for the TFRPs for the taxable periods in issue, or that he is liable but only for amounts less than those assessed by respondent, the fact remains that petitioner has made no cogent argument, and the record before us does not appear to support such an argument.

In sum, petitioner is liable for the TFRPs arising from Chunel's failure to pay its employment taxes for the taxable periods in issue. See Rules 122(b), 142(a).

## IV.  Whether Respondent's Settlement Officer Abused Her Discretion

Regarding matters other than the underlying tax liabilities, our review of a settlement officer's determination is generally based on whether there has been an abuse of discretion.  In that regard, the determination of the settlement officer is not an abuse of discretion unless the determination is arbitrary, capricious, or without sound basis in law or fact.  Giamelli v. Commissioner, 129 T.C. at 111; see Titsworth v. Commissioner, 2012 WL 86670, at *6 (holding that the taxpayer bears the burden of proving abuse of discretion even when the case is submitted to the Court fully stipulated); see also Link v. Commissioner, T.C. Memo. 2013-53.

Petitioner argues that the SO abused her discretion by not considering collection alternatives and by imposing "artificially short time frames for

**[\*21]** document production and responses to complex issues". However, the fact

of the matter is that at no time during the administrative phase of this case did

petitioner present to the SO any specific proposal for either an installment

agreement or an offer-in-compromise. In this regard courts have consistently held

that it is not an abuse of discretion for the settlement officer to decline to consider

a collection alternative when no specific proposal is ever presented. E.g., Kindred

v. Commissioner, 454 F.3d 688, 696 (7th Cir. 2006); Kendricks v. Commissioner,

124 T.C. 69, 79 (2005).[6] Stated otherwise, it is the obligation of the taxpayer, not

the reviewing officer, to start negotiations regarding a collection alternative by

making in the first instance a specific proposal and supporting it. Lyons v.

Commissioner, T.C. Memo. 2014-32, at \*11.

Regarding petitioner's other point concerning the conduct of the

administrative hearing, the fact of the matter here is that from the date of the SO's

first letter in June 2013 to the issuance of the notice of determination in November

---

[6] Given petitioner's failure to make a specific proposal of a collection alternative, we need not consider the sufficiency vel non of the financial information actually furnished by him to the settlement officer. See, e.g., Kindred v. Commissioner, 454 F.3d 688, 697 (7th Cir. 2006); Olsen v. United States, 414 F.3d 144, 151 (1st Cir. 2005); Murphy v. Commissioner, 125 T.C. 301, 315 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Wright v. Commissioner, T.C. Memo. 2012-24 (regarding the imperative that a taxpayer support a request for a collection alternative with financial information sufficient for a settlement officer to evaluate the taxpayer's ability to pay).

[*22] 2013, petitioner had over four months in which to provide relevant information and documentation to respondent. See Gazi v. Commissioner, T.C. Memo. 2007-342, slip op. at 19 ("There is no requirement that the Commissioner wait a certain amount of time before making a determination as to a proposed * * * [collection procedure]."). Section 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs., provides: "Appeals will * * * attempt to conduct a CDP hearing and issue a Notice of Determination as expeditiously as possible under the circumstances." In addition, there is nothing in the record to suggest that petitioner ever sought an extension of time to produce additional information and documentation.

In conclusion, the SO did not abuse her discretion by not allowing a collection alternative or by the manner in which she conducted the administrative hearing.

V. Whether Collection Would Create an Undue Hardship

A determination that the collection of a taxpayer's outstanding liabilities would create an undue hardship necessarily requires an evaluation of the taxpayer's ability to pay. Wright v. Commissioner, T.C. Memo. 2012-24.

In the instant case, the SO reviewed available documents, analyzed income and expenses, and prepared an Income And Expense Table that reflected monthly disposable income of $8,279 for petitioner. The SO furnished the Table with an

[*23] explanation to petitioner's representative and invited a response. However, neither a response nor additional documents were forthcoming that might have demonstrated that the SO's analysis was faulty. Under these circumstances, the Court cannot conclude that collection of petitioner's outstanding liabilities would create an undue hardship. See supra note 6 (regarding the need for financial information sufficient for a settlement officer to evaluate the taxpayer's ability to pay).

VI.  Other Issues Raised by Petitioner

A.  Application of Credits and Adjustments

Petitioner alleges that respondent improperly applied credits and made adjustments to petitioner's TFRP liabilities. The Court has previously held that a challenge to the proper crediting of checks to a particular tax year is not a challenge to the underlying liability because such an inquiry does not raise a question regarding the amount of tax for a particular taxable period but instead presents the question whether the liability remains unpaid. Kovacevich v. Commissioner, T.C. Memo. 2009-160. Petitioner's challenge to respondent's application of credits, payments, and adjustment similarly raises the question of the amount of tax liability remaining unpaid. We therefore review the crediting of petitioner's accounts for abuse of discretion. See Concert Staging Servs., Inc. v.

[*24] Commissioner, T.C. Memo. 2011-231; see also Davis v. United States, 961 F.2d 867, 878 (9th Cir. 1992); Orian v. Commissioner, T.C. Memo. 2010-234; Kovacevich v. Commissioner, T.C. Memo. 2009-160.

Although petitioner has repeatedly alleged that respondent improperly applied credits, payments, and adjustments, petitioner has not explained how such credits, payments, and adjustments should have been applied or whether any payments were designated payments. Accordingly, the Court concludes that there was no abuse of discretion in the manner in which credits, payments, and adjustments were applied against petitioner's liabilities for the taxable periods in issue.

B. Abatement of Interest

On brief petitioner requests, for the first time, that interest be abated "for reasonable cause". However, the general rule in this Court is that on appeal of a collection determination, judicial review is limited to those issues properly raised during the administrative hearing. Giamelli v. Commissioner, 129 T.C. at 114-115; Magana v. Commissioner, 118 T.C. 488, 493 (2002). In this regard, petitioner failed to properly raise the issue of interest abatement at any time during the administrative hearing by either submitting a Form 843, Claim For Refund And Request For Abatement, or otherwise making a request for interest abatement.

**[*25]** Accordingly, this issue may not now be considered in the judicial proceeding. See Day v. Commissioner, T.C. Memo. 2014-215, at *11; see also sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; cf. sec. 6404(e), (h); Rules 280-284.

### C. Request for Remand

Finally, petitioner requests that the Court remand this case for further review. However, on the basis of the record before us, we conclude that remand would be neither appropriate nor helpful, nor, as discussed supra in section III.D. of this opinion regarding the Court's de novo review of petitioner's underlying tax liabilities, would remand serve any purpose. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001).

## VII. Conclusion

In view of the foregoing, the Court sustains the determination of the IRS Appeals Office to proceed with the proposed levy in respect of petitioner's outstanding TFRP liabilities for the taxable periods in issue.

**[*26]** Finally, the Court has considered all of petitioner's contentions and, to the extent not specifically discussed herein, concludes that they are without merit, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.