BOBBIE J. ROBERTS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roberts v. Commissioner
Docket No. 1572-80.
United States Tax Court
T.C. Memo 1987-391; 1987 Tax Ct. Memo LEXIS 388; 54 T.C.M. (CCH) 94; T.C.M. (RIA) 87391; August 11, 1987. Ben A. Douglas, for the petitioner. Gary A. Benford, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in petitioner's 1975 Federal income tax in the amount of $ 59,204.33 and additions to tax pursuant to sections 6651(a) [1] and 6653(a) [2] of $ 14,801.08 and $ 2,960.22, respectively. *390 After concessions, the issues remaining for decision are: (1) whether petitioner qualifies for relief from liability for Federal income taxes upon community income under section 66(c); if we find that petitioner does not qualify for relief under section 66(c), then (2) whether petitioner is entitled to a theft loss deduction with respect to her share of community income; (3) whether petitioner is liable for the addition to tax under section 6651(a) for her failure to file a timely return; and (4) whether petitioner is entitled to an award for litigation costs. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner was a resident of Fort Worth, Texas at the time the petition in this case was filed. She was married to Charles N. Morgan (Morgan) from December 31, 1970 until August 17, 1976. With the exception of a brief period in early 1975, petitioner and Morgan resided together throughout 1975, the year in issue. Petitioner and Morgan separated in March, 1976. During 1975, Morgan and petitioner were both self-employed *391 in real estate activities. Morgan put together real estate transactions; petitioner was a real estate agent. In 1975, Morgan received $ 38,900 in commissions or fees in connection with the sale of a tract of land known as the "Clark 236" property. [3] Also during 1975, as a member of an investor group known as Interstate Investors (Interstate), Morgan acted as an intermediary in the acquisition for Interstate of a tract of land known as the "Singing Hills" property. In connection with this transaction, Morgan indirectly received $ 218,541.40. [4]
Petitioner was aware that Morgan was involved in various real estate transactions during 1975 and received his livelihood from real estate commissions and fees; *392 she knew specifically of his involvement in the development of Singing Hills. She had even visited the Singing Hills property with Morgan and another investor, Larry Ragland (Ragland), prior to its purchase. Petitioner and Morgan had a joint checking account at the Ridglea State Bank (the Ridglea account) where funds received by Morgan from his real estate transactions were deposited. Several times during 1975, petitioner wrote checks on the Ridglea account; one of these checks (for $ 10,000) was made payable to "Charles N. Morgan Investment Account." Other checks drawn on the Ridglea account were to local business concerns, i.e., department stores, grocery store, etc. [5] Morgan also wrote checks on the Ridglea account; his checks were usually made payable to petitioner, who then endorsed and deposited the checks in her separate checking account at Continental National Bank, from which she paid bills and miscellaneous expenses. With *393 funds from his involvement in the Singing Hills transaction, Morgan purchased four certificates of deposit issued by the Ridglea State Bank; [6] these certificates earned a total of $ 2,412.83 in interest in 1975. Although Ragland was a co-owner of Certificate Nos. 3973 and 4008, Morgan in fact received all of the interest earned thereon. Petitioner was neither aware that Morgan had purchased these certificates nor did she know of the interest income derived therefrom. Petitioner and Morgan earned $ 178.25 in interest with respect to a jointly owned certificate of deposit with City National Bank in 1975. This certificate *394 was not purchased with proceeds of Morgan's real estate transactions. During 1975, petitioner and Morgan enjoyed an affluent lifestyle. They owned and resided in a large home next to a golf course in Fort Worth. They purchased approximately $ 13,000 of furniture for the home in 1974 and 1975. Morgan drove a 1975 Cadillac automobile; petitioner drove a 1974 Monte Carlo automobile. Further, they went on an expensive winter vacation in Colorado. Morgan was secretive as to the source of funds he gave petitioner to operate their household; he told her that they were living beyond their means. On one occasion, in late 1975, petitioner fond a large sum of cash in the pockets of Morgan's pants for which she received the explanation from Morgan that he owed the money to someone else. In March, 1976, petitioner and Morgan separated. Morgan immediately left the family residence; petitioner remained there until August, 1976. Following the separation, petitioner met her present husband, Larry Roberts (Roberts). At some point in June or July, 1976, in response to petitioner's relationship with Roberts, Morgan shot at Roberts. Morgan also threatened to kill petitioner and her son. *395 Around the time she separated from Morgan, petitioner was approached by Ragland regarding alleged dishonesty by Morgan in connection with the purchase of the Singing Hills property. Ragland informed petitioner that Morgan had allegedly defrauded Interstate by taking an approximate $ 268,000 kickback from the sellers of the Singing Hills property. Ragland pressured petitioner to give him Morgan's files in order to corroborate Interstate's contentions. Ragland also pressured petitioner to relinquish her entire claim and interest in the marital property (i.e., house, furniture, etc.), asserting that if she did not do so, Interstate would sue her as well as Morgan with respect to the Singing Hills transaction. Petitioner eventually acceded to Ragland's demands. She turned over to him several of Morgan's files pertaining to the Singing Hills transaction and relinquished her rights in the home, furniture and other property. [7]
Petitioner and Morgan *396 were divorced in August, 1976; thereafter, petitioner married Roberts. Pursuant to the divorce decree, petitioner was awarded the 1974 Monte Carlo automobile, certain furniture she had owned before the marriage, and all cash in her possession. [8]
In November, 1976, an Internal Revenue Service agent contacted petitioner with respect to the fact that no 1975 income tax return had been filed by petitioner and/or Morgan. [9] Petitioner informed the agent that she had no knowledge of Morgan's income. [10] Respondent's agent advised petitioner to file her own separate return. Petitioner filed her separate 1975 return on November 29, 1976. [11]
*397 Respondent issued a notice of deficiency to petitioner on November 28, 1979. Respondent determined that petitioner was liable for on-behalf of the combined community income and allowed petitioner one-half of the total deductions related to such income. Respondent also asserted that petitioner was liable for the addition to tax under section 6651(a)(1) for failing to file a timely return. Petitioner contends that pursuant to section 66(c) she is entitled to tax relief on her share of the community income. She alternatively contends that should she not be entitled to such relief, she is then entitled to a theft loss deduction for 1975 based upon the activities of her husband. Finally, petitioner contends that she is not liable for the addition to tax under section 6651(a)(1) and that she is entitled to an award of litigation costs. OPINION Texas is a community property State. Community property consists of all property acquired during the marriage by either spouse except for that acquired by gift, devise, descent, or in recovery for personal injury. Tex. Fam. Code Ann. sec. 5.01 et seq. (Vernon 1975); Lange v. Phinney,507 F.2d 1000, 1005 (5th Cir. 1975). *398 As a general rule, income considered community property is taxed equally to each spouse. [12]United States v. Mitchell,403 U.S. 909 (1971); Hopkins v. Bacon,282 U.S. 122 (1930). Section 66(c) [13] provides relief to a spouse who fails to include in his or her gross income an item of community income attributable to the other spouse provided the spouse seeking relief files a separate return and had no knowledge, nor reason to know, of the unreported item of community income and it would be inequitable to include such item in that spouse's income.
Under Texas law, all of petitioner's and Morgan's 1975 income constitutes community income. Therefore, unless relief is available under section 66(c), petitioner is liable for one-half of *399 her and Morgan's 1975 community income less community expenses. To qualify for relief under section 66(c), petitioner must satisfy all four of the following conditions: (1) she must not have filed a joint return with Morgan for 1975, 2) she must not have included in her gross income for 1975 an item of community income properly includible therein which, in accordance with the rules contained in section 879(a) would be treated as the income of Morgan, (3) she must establish that she did not know of, and had no reason to know of, such items of community income, and (4) taking into account all facts and circumstances, it is inequitable to include such item of community income in her gross income. The purpose of section 66(c) is to provide relief from unreported community income which, pursuant to the rules of section 879(a), is attributable to the other spouse. If all four of the prerequisites set forth in section 66(c) are satisfied, then the item of unreported community income is includible solely in the income of the other spouse. In this case, the first two prerequisites for relief under section 66(c) are satisfied. Respondent has conceded such. Thus, we turn our *400 attention to the third prerequisite. Section 66(c)(3) requires petitioner to show that she did not know of, and had no reason to know of, the unreported (items) of community income. In our opinion, this prerequisite for relief has not been satisfied with respect to the real estate commissions and fees. Petitioner was aware that Morgan was involved in real estate transactions during 1975 and that such activities generated income, although she did not know the exact amount. She visited the Singing Hills property with Morgan prior to the closing of the Singing Hills transaction; she was aware that he assisted in the purchase of the property for others, and undoubtedly was entitled to a commission and/or fee as a result of his efforts. The fact that she was unable to ascertain the exact amount of commissions and/or fees received by Morgan is immaterial. [14] We thus find that petitioner either knew of or had reason to know of the commissions and/or fees received by Morgan from his real estate activities. [15] As petitioner has failed to meet the third prerequisite for relief, we need not consider whether the fourth prerequisite is satisfied with respect to this item of income. [16] *401 With respect to interest income, we find that petitioner did not know, and had no reason to know, that Morgan received interest income from his real estate transactions. Further, we do not believe that she knew, or had reason to know, that the Ridglea certificates of deposit were obtained from the proceeds of the Singing Hills transaction. [17] Hence, she had no reason to know that Morgan had interest income from these certificates of deposit. In accordance with the fourth prerequisite for relief under section 66(c), we believe *402 that under all the circumstances, it would be inequitable to include this item of income in petitioner's income. [18] However, petitioner did have knowledge of the City National Bank certificate of deposit which she jointly held with Morgan. The interest earned on that certificate of deposit ( $ 178.75) is community income and her share of such interest ( $ 89.37) is properly includible in her gross income. Petitioner argues that in the event she is not entitled to relief with respect to unreported community income for 1975, she should be entitled to a theft loss deduction with respect to such community income. Petitioner bears the burden of proof on this issue, Welch v. Helvering,290 U.S. 111 (1932); Rule 142(a), which *403 she failed to carry. [19]
Respondent determined that petitioner is liable for the addition to tax under section 6651(a)(1). This addition is imposed for failing to file a timely return unless such failure was "due to reasonable cause and not due to willful neglect." Section 6651(a)(1). [20] Petitioner contends that she failed to file a 1975 tax return until November, 1976 because she did not have information as to the items of income received by Morgan in 1975. She also contends that she was emotionally distressed at the time. *404 As stated earlier, petitioner knew, or should have known, that Morgan received income from his real estate transactions which should have been reported not only by Morgan but by herself as community income. She was aware that a tax liability existed, as evidenced by a statement contained in her Petition for Divorce. She also was aware of the income produced by her own real estate efforts. While we sympathize with petitioner's plight and emotional distress, most (if not all) of the problems encountered by her were subsequent to the required filing date (April 15, 1976). We therefore, sustain respondent's determination with respect to the addition to tax under section 6651(a). Finally, petitioner requests an award of litigation costs in this case. Rule 231(a)(2)(i) provides that in unagreed cases, a claim for litigation costs shall be made by motion filed within thirty days after the service of a written opinion determining the issues in the case. As such, petitioner's current claim for litigation costs is premature. [21]
*405 To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Respondent conceded that petitioner is not liable for this addition to tax. ↩
3. This amount is comprised of a $ 5,700 commission and $ 33,200 designated as "interest". The record is vague with respect to Morgan's entitlement to the $ 33,200 "interest" payment. We believe that in reality this "interest" payment is a fee and shall treat it as such. ↩
4. Morgan actually received nine checks totalling $ 268,541.40. He returned one of these checks in the amount of $ 50,000 which was then used as a part of the downpayment for the Singing Hills property. ↩
5. These checks were drawn in the amounts of $ 900, $ 1,000, $ 700, and $ 1,000. It is noteworthy that petitioner drew two checks on the Ridglea account in 1976, the last one being in April, 1976, after Morgan and petitioner had separated. ↩
6. The certificates were purchased in the following amounts and were payable to the following named payees: Certificate No.
Payee
Amount
3973 The redemption proceeds of Certificate No. 3973 were used to purchase Certificate No. 4008. Morgan subsequently cashed Certificate No. 4008 and used the proceeds for his own benefit. *↩
Larry Ragland or
$ 100,000.00
Charles N. Morgan
3978  Charles N. Morgan
120,000.00
4008 *
Larry N. Ragland or
100,541.67
Charles N. Morgan
4012  Charles N. Morgan
120,000.00
7. Petitioner executed several documents which, among other things, transferred petitioner's interest in the marital home, stock of a company known as Texas Fina Thiazine, and her interest in the household property and furniture. ↩
8. At some point in 1976, and subsequent to her divorce, Ragland contacted petitioner and allowed her to recover the furniture which she had previously transferred to Interstate. ↩
9. Morgan did not file a Federal income tax return for 1975; on August 26, 1981, he pled guilty to willfully and knowingly failing to file an income tax return for 1975 pursuant to section 7203. ↩
10. In the Petition for Divorce, petitioner stated that a tax liability may have been incurred and if so, she requested the Court to order Morgan to pay such liability. ↩
11. Petitioner reported gross receipts of $ 3,819 from her own real estate activities with a net profit of $ 394. ↩
12. To the extent deductible expenses are paid out of community funds or relate to community property, each spouse is entitled to deduct one-half of such expenses. Johnson v. Commissioner,72 T.C. 340↩ (1979). 13. Section 66(c) was added to the Code by section 424(b)(1) and (c) of the Tax Reform Act of 1984, Pub.L. 98-369, 98 Stat. 802, 803; it applies to all open years and all pending cases. ↩
14. See Bozek v. Commissioner,T.C. Memo. 1986-37↩. 15. See Sanders v. Commissioner,T.C. Memo. 1986-26; Rimple v. Commissioner,T.C. Memo. 1985-245↩. 16. We observe, however, that Morgan used his real estate earnings for the benefit of both himself and petitioner. Petitioner received the benefits of comfortable and expensive housing, furnishings, automobiles and vacations. If we had addressed the fourth prerequisite, we would find that it would not be inequitable to include Morgan's real estate earnings in petitioner's gross income. See Baldwin v. Commissioner,T.C. Memo. 1986-342↩. 17. The proceeds from the Singing Hills transaction were used to purchase certificates in the names of Morgan and Ragland. Petitioner was a named owner of a different certificate of deposit with Morgan, and the proceeds to purchase that certificate are not traceable to Singing Hills. ↩
18. Since the interest income from Morgan's real estate transactions is attributable to Morgan alone, so are the associated interest expenses, i.e., $ 10,405. ↩
19. Petitioner's counsel advanced this argument in his opening statement but his brief made no mention of it. Further, the record does not support such a finding. ↩
20. Section 6651(a)(1) provides: (a) ADDITION TO TAX. -- In case of failure -- (1) to file any return * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; Section 6651(b)(1) provides: (b) Penalty Imposed on Net Amount Due. -- For purposes of -- (1) subsection (a)(1), the amount of the tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed on the return. ↩
21. The present section 7430, which provides for the awarding of court costs and certain fees in civil proceedings brought in a court of the United States, was added to the Internal Revenue Code by sec. 292(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 572, and is applicable only to proceedings commenced after February 28, 1983. The petition in this case was filed in 1980. As such, section 7430 is therefore inapplicable. We also note that petitioner has not prevailed in this case as would be required by section 7430(a). ↩