T.C. Memo. 2011-231

UNITED STATES TAX COURT

CONCERT STAGING SERVICES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3050-09L.          Filed September 26, 2011.

<u>Neil Deininger</u> and <u>Amy G. Hall</u>, for petitioner.

<u>William F. Castor</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  Petitioner petitioned the Court under section
6330(d) to review the determination of respondent's Office of
Appeals (Appeals) sustaining a proposed levy upon petitioner's
property to collect $154,160 of employment taxes for the taxable
periods ended September 30, 2003, December 31, 2003, and March

31, 2004, and unemployment taxes for 2003.[1]  The issues for decision are:  (1) Whether petitioner is entitled to relief from additions to tax under section 6651(a)(2) and penalties under section 6656(a) because of reasonable cause.  We hold it is not; (2) whether Appeals abused its discretion in denying petitioner's request to reallocate prior payments and deposits from the non-trust-fund portion to the trust fund portion of petitioner's employment tax liabilities.  We hold it did not; (3) whether Appeals abused its discretion in denying petitioner's request for a face-to-face collection due process (CDP) hearing in Little Rock, Arkansas (Little Rock).  We hold it did not; (4) whether Appeals abused its discretion in not granting petitioner a two-part hearing to separately discuss the issue of respondent's allocation of petitioner's payments to the non-trust-fund portion of tax liabilities and the issue of petitioner's proposed collection alternatives.  We hold it did not.[2]

---

[1]Unless otherwise indicated, section references are to the applicable version of the Internal Revenue Code (Code), and Rule references are to the Tax Court Rules of Practice and Procedure. Some dollar amounts are rounded.

[2]We deem petitioner to have conceded issues raised in the petition but not addressed on brief.  See Palahnuk v. Commissioner, 127 T.C. 118, 120 n.2 (2006), affd. 544 F.3d 471 (2d Cir. 2008); Harbor Cove Marina Partners Pship. v. Commissioner, 123 T.C. 64, 66 (2004).

## Background

The parties submitted this case to the Court for decision without trial.  See Rule 122.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  The stipulated facts are found accordingly.  When the petition was filed, petitioner was an Arkansas corporation with its principal place of business in Little Rock.

Petitioner operated as a stage production company from the early 1980s until June 30, 2006.  Michael Pinner (Mr. Pinner) was petitioner's sole shareholder and corporate officer at all relevant times.

Petitioner filed Forms 941, Employer's Quarterly Federal Tax Return, for the taxable periods ended September 30, 2003, December 31, 2003, and March 31, 2004 (collectively, employment tax returns).  Petitioner also filed Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 2003 (unemployment tax return).  Petitioner failed to pay all of the taxes reported on its employment tax returns and unemployment tax return (collectively, unpaid tax liabilities).  According to Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, petitioner entered into an installment agreement with respondent in connection with petitioner's unpaid tax liabilities on September 8, 2004.

On January 17, 2008, respondent issued to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing notifying petitioner that respondent proposed to levy upon petitioner's property to collect the following tax liabilities:

| Form | Tax Period | Unpaid Amount | Additional Penalty[1] | Interest |
|------|-----------|--------------|------------|----------|
| 941 | 9/30/03 | $36,024 | $11,278 | $16,417 |
| 941 | 12/31/03 | 24,386 | 5,361 | 7,468 |
| 941 | 3/31/04 | 33,731 | 6,930 | 9,277 |
| 940 | 12/31/03 | 2,164 | 497 | 627 |
| Total | | 96,305 | 24,066 | 33,789 |

[1]We understand respondent's reference to "additional penalty" to relate to the addition to tax under sec. 6651(a)(2) and penalties under sec. 6656(a).

On February 15, 2008, petitioner filed with Appeals a Form 12153, Request for a Collection Due Process or Equivalent Hearing. The request proposed an installment agreement or offer-in-compromise as collection alternatives to respondent's proposed levy. Petitioner also requested in an attachment to Form 12153 that the additions to tax and penalties be abated because of reasonable cause. Petitioner also contended that respondent overstated the section 6656(a) penalty for the quarter ended September 30, 2003. Petitioner further asserted that respondent erred in failing to apply payments and deposits made by petitioner or Mr. Pinner to the trust fund portion of taxes due on petitioner's employment tax returns (trust fund taxes).[3]

---

[3]The trust fund taxes refer to taxes petitioner was required to withhold from the wages of its employees and to hold in trust
(continued...)

By letter dated February 18, 2008, petitioner requested a face-to-face CDP hearing in Little Rock.

On February 18, 2008, petitioner faxed to respondent Form 433-B, Collection Information Statement for Businesses, signed by Mr. Pinner. On the Form 433-B, Mr. Pinner reported that petitioner was out of business but owned real property. Mr. Pinner reported that the property's value was $56,000 and that it was subject to a $72,000 encumbrance. Petitioner did not attach supporting documentation regarding the encumbrance, though the Form 433-B instructed petitioner to do so. The Form 433-B also reported that a fire had destroyed a building and its contents but that petitioner still owned "misc[ellaneous] equipment scattered around the country of uncertain value".

By letter dated March 28, 2008, a settlement officer with Appeals (settlement officer) notified petitioner that a CDP hearing had been scheduled by telephone for April 23, 2008. The letter stated that the settlement officer could consider collection alternatives only if petitioner submitted a completed Form 433-B with supporting documentation, documentation supporting petitioner's claims as stated in Form 12153, and

---

[3](...continued)
for the United States. See sec. 7501(a); <u>Mason v. Commissioner</u>, 132 T.C. 301, 321 (2009).

copies of Mr. Pinner's 2006 and 2007 individual Federal income tax returns.[4]

On April 9, 2009, petitioner resubmitted a copy of the previously filed Form 433-B to Appeals without supporting documentation. Petitioner also submitted a memorandum in support of its position (memorandum). The memorandum stated that petitioner was out of business and that petitioner's main concern was whether payments and deposits had been properly applied to the trust fund portion of petitioner's employment tax liabilities, which was borne by Mr. Pinner as petitioner's sole responsible officer.[5] The memorandum also claimed that certain payments respondent allocated to the non-trust-fund portion of employment taxes due for the quarter ended June 30, 2003 (June 2003 quarter), should be reallocated to the trust fund portion of petitioner's unpaid tax liabilities. Finally, the memorandum stated that the Internal Revenue Service (IRS) did not prepare a

[4]Mr. Pinner did not file his 2006 individual Federal income tax return until Dec. 2, 2008. As of Dec. 18, 2008, Mr. Pinner had not filed his 2007 individual Federal income tax return. The record is not clear whether Mr. Pinner submitted his income tax returns to Appeals.

[5]The Commissioner may collect unpaid trust fund taxes from an officer or employee within a company who is under a duty to collect and pay over trust fund taxes. See secs. 6671(a) and (b), 6672. This is commonly known as the trust fund recovery penalty (TFRP). The individuals who are liable for the TFRP are referred to as "responsible persons". Mason v. Commissioner, supra at 321. The TFRP assessed against a responsible person is separate from the employer's responsibility for the unpaid taxes. Sec. 6672(a); Mason v. Commissioner, supra at 321.

binding Form 433-D, Installment Agreement, formalizing petitioner's installment agreement with terms permitting respondent to apply payments in the Government's best interest.[6] Attached to the memorandum were copies of 11 checks from petitioner's bank account totaling $27,500 and 2 checks totaling $3,500 from Mr. Pinner's personal bank account. All of the checks bore the notation: "Trust Fund Only".

On April 23, 2008, the settlement officer conducted a CDP hearing with petitioner's counsel by telephone. The settlement officer stated that a face-to-face hearing could be held in Oklahoma City, Oklahoma (Oklahoma City), but petitioner's counsel refused that invitation. Next, the settlement officer discussed respondent's application of petitioner's Federal tax deposits and payments to the trust fund and non-trust-fund portions of petitioner's unpaid tax liabilities. The settlement officer stated that Mr. Pinner's TFRP was not properly at issue because Mr. Pinner had received a prior opportunity to appeal a CDP notice with respect to the TFRP.

In a letter dated May 1, 2008, petitioner's counsel contended that, contrary to respondent's assertion, neither petitioner's counsel nor petitioner signed or received Form 433-D

---

[6]Sec. 301.6159-1(b)(1)(i)(B), Proced. & Admin. Regs., permits the Commissioner to require any installment agreement entered into by the taxpayer and the IRS to include terms protecting the interests of the Government. The terms of Form 433-D state that the IRS "will apply all payments on this agreement in the best interest of the United States."

that permitted respondent to apply payments in the Government's best interest.  The letter stated that petitioner requested an installment agreement on or about August 31, 2004, and soon thereafter petitioner and petitioner's counsel received a Letter 2850, Approval of Request to Pay Taxes in Installments.

Respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) sustaining respondent's proposed levy on December 31, 2008.  The notice of determination stated that all payments made toward the unpaid tax liabilities had been applied towards petitioner's outstanding liability and that petitioner's challenge to the application of payments between the trust fund and non-trust-fund portion was immaterial to the amount of tax owed.  The notice of determination further stated that Appeals did not have jurisdiction to review whether payments were misapplied to the June 2003 quarter because that quarter was paid in full and not subject to the proposed levy.  The notice of determination conceded that respondent had overstated the section 6656(a) penalty for the quarter ended September 30, 2003, by $2,451.71.  The notice of determination rejected petitioner's proposed collection alternatives on account of petitioner's failure to produce supporting documentation and stated that petitioner is not entitled to abatement of additions to tax and

penalties because of the absence of reasonable cause.  Petitioner petitioned the Court in response to the notice of determination.

## Discussion

Under section 6331(a), the Commissioner is authorized to levy upon the property or property rights of a taxpayer who fails to make payment for taxes due within 10 days after notice and demand for payment.  At least 30 days before a levy is made, the Commissioner must notify the taxpayer in writing of the opportunity to appeal the proposed levy at a CDP hearing held by Appeals.  See sec. 6330(a)(1), (b)(1).  At the hearing, the taxpayer may raise any relevant issue as to the propriety of the proposed levy, including spousal defenses, challenges to the collection action, and offers of collection alternatives.  Sec. 6330(c)(2)(A); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).  The taxpayer may also challenge the existence or amount of the underlying tax liability if the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the liability.  Sec. 6330(c)(2)(B).

A taxpayer may petition the Court under section 6330(d) to review Appeals' determination.  Where the validity of the tax liability is properly at issue, we review Appeals' determination de novo.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the validity of the tax liability is not properly at issue, we review Appeals'

determination for abuse of discretion. <u>Sego v. Commissioner</u>, <u>supra</u> at 610; <u>Goza v. Commissioner</u>, <u>supra</u> at 181-182. An abuse of discretion occurs when Appeals' determination is arbitrary, capricious, or without sound basis in fact or law. See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); <u>Freije v. Commissioner</u>, 125 T.C. 14, 23 (2005). We first address petitioner's claim for abatement of additions to tax under section 6651(a) and penalties under section 6656.

I. <u>Liability Under Sections 6651(a) and 6656</u>

Where a taxpayer fails to timely pay tax shown on a return, section 6651(a)(2) imposes an addition to tax equal to 0.5 percent of the required tax payment per month, not to exceed 25 percent in the aggregate. Section 6656(a) similarly imposes a penalty on a taxpayer who fails to make any requisite Federal tax deposits by the date prescribed. See also sec. 6656(b). Additions to tax under section 6651(a)(2) and penalties under section 6656 may be abated where a taxpayer proves that the failure to pay was due to reasonable cause and not willful neglect. See secs. 6651(a)(2), 6656(a); see also sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioner does not dispute that it failed to pay the unpaid tax liabilities but claims that these additions to tax and penalties should be abated for reasonable cause. We disagree.

A taxpayer may challenge the Commissioner's determination of the underlying tax liability at a CDP hearing only if the taxpayer did not receive a notice of deficiency or have any prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). The underlying tax liability is any amount owed by a taxpayer, including the deficiency, additions to tax, and statutory interest. See Katz v. Commissioner, 115 T.C. 329, 338-339 (2000); McNair Eye Ctr., Inc. v. Commissioner, T.C. Memo. 2010-81. The record does not establish, and respondent does not contend, that petitioner received a notice of deficiency or that petitioner had a prior opportunity to dispute the additions to tax or penalties. Accordingly, we review de novo petitioner's entitlement to an abatement of the penalties and additions as determined by respondent. See Downing v. Commissioner, 118 T.C. 22, 29 (2002).

Respondent bears the burden of producing evidence that the imposition of additions to tax and penalties is appropriate. See sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The parties agree that petitioner failed to timely make tax payments and Federal tax deposits, and on that basis we conclude that respondent has carried his burden. Petitioner thus bears the burden of proving that respondent's determination is inappropriate because the failure to pay was due to reasonable

cause.  <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985); see
also <u>Higbee v. Commissioner</u>, <u>supra</u> at 448.

Reasonable cause exists if petitioner can establish that it,
through Mr. Pinner, "exercised ordinary business care and
prudence * * * and was nevertheless either unable to pay the tax
or would suffer an undue hardship * * * if * * * [it] paid on the
due date."  Sec. 301.6651-1(c)(1), Proced. & Amin. Regs.[7]  Courts
have characterized this as a heavy burden.  See, e.g., <u>United
States v. Boyle</u>, <u>supra</u> at 245; <u>Valen Manufacturing Co. v. United
States</u>, 90 F.3d 1190, 1193 (6th Cir. 1996); <u>Roberts v.
Commissioner</u>, 860 F.2d 1235, 1241 (5th Cir. 1988), affg. T.C.
Memo. 1987-391.  The determination of whether a taxpayer
exercised ordinary business care and prudence is based on "all
the facts and circumstances of the taxpayer's financial
situation, including the amount and nature of the taxpayer's
expenditures in light of the income".  Sec. 301.6651-1(c)(1),
Proced. & Admin. Regs.  A heightened standard for reasonable
cause applies when trust fund taxes are at issue.  See sec.
301.6651-1(c)(2), Proced. & Admin. Regs. (noting by way of

---

[7]We note that regulations under sec. 6656 describe
"reasonable cause" only as to first-time depositors.  See sec.
301.6656-1, Proced. & Admin. Regs.  However, we have often looked
to sec. 6651(a)(2) and regulations thereunder for guidance in
determining reasonable cause under sec. 6656 as we have found the
two sections to be analogous.  See, e.g., <u>Charlotte's Office
Boutique, Inc. v. Commissioner</u>, 121 T.C. 89, 109 (2003), affd.
425 F.3d 1203 (9th Cir. 2005); <u>Custom Stairs & Trim, Ltd. v.
Commissioner</u>, T.C. Memo. 2011-155.

example that what would ordinarily be considered reasonable cause might not be considered as such when trust fund taxes are at issue); see also <u>McNair Eye Ctr., Inc. v. Commissioner</u>, <u>supra</u>.

Petitioner argues that it has reasonable cause for failure to pay its taxes because it lacked sufficient funds to both satisfy its tax liabilities and remain in operation. In a statement he forwarded to Appeals requesting abatement of penalties, Mr. Pinner claimed that petitioner's business began to suffer after the September 11, 2001, attacks at the World Trade Center where it was staging a series of events. Mr. Pinner stated that as a result of the attacks, petitioner lost staging structures and equipment and incurred significantly higher insurance rates that hurt its business. Mr. Pinner also alleged that petitioner subsequently reduced personnel and business expenses, and Mr. Pinner sold his houseboat and took out a second mortgage on his Colorado ranch in order to provide additional funding for petitioner. We are not persuaded that these events, even if true, establish that petitioner exercised ordinary business care and prudence or that it was unable to pay or would suffer undue hardship if required to pay on the due date.

Petitioner has not produced evidence to support the claim that Mr. Pinner sold his houseboat and took out a second mortgage in order to raise additional funds for petitioner.[8] Nor has

_____

[8]Mr. Pinner also claimed that petitioner lost all of its
(continued...)

petitioner offered evidence to support its financial status at the time the taxes were due. As this case was submitted for decision without trial pursuant to Rule 122, we have no occasion to observe Mr. Pinner making these self-serving statements. Especially given the lack of corroborating evidence in support of Mr. Pinner's statements, we are simply unwilling to credit the claim that petitioner exercised ordinary business care and prudence. See Watts v. Commissioner, T.C. Memo. 2009-103. We therefore sustain respondent's determination that petitioner is liable for additions to tax under section 6651(a)(2) and penalties under section 6656.

## II. Allocations of Payments Between Trust Fund and Non-Trust-Fund Tax Liabilities

Petitioner next challenges respondent's application of its payments and deposits to the non-trust-fund portion rather than the trust fund portion of its employment tax liabilities. Petitioner contends that a challenge to respondent's application of its payments to the non-trust-fund portion of its employment tax liabilities (non-trust-fund taxes) is a challenge to the "existence or amount of the underlying tax liability" under

---

[8](...continued)
equipment because of a burglary and a fire, plunging it further into financial difficulties. These events, however, occurred after the closing of the business in 2006 and could not have been the cause of petitioner's inability to satisfy its tax liabilities in 2003 and 2004. Therefore, we cannot conclude that these events constitute reasonable cause for petitioner's failure to pay its taxes on time. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

section 6330(c)(2)(B) and is subject to de novo review.  We disagree.

In Kovacevich v. Commissioner, T.C. Memo. 2009-160, we held that "questions about whether a particular check was properly credited to a particular taxpayer's account for a particular tax year are not challenges to his underlying tax liability".  See also Orian v. Commissioner, T.C. Memo. 2010-234.  Our holding in Kovacevich is consistent with our interpretation of the phrase "underlying tax liability" in prior cases, where we determined that the "underlying tax liability" challenged by a taxpayer under section 6330(c)(2)(B) refers to any amount owed by a taxpayer pursuant to tax laws.  See, e.g., Katz v. Commissioner, 115 T.C. at 338-339; McNair Eye Ctr., Inc. v. Commissioner, T.C. Memo. 2010-81.  We reasoned in Kovacevich that a challenge to the proper crediting of checks to a particular tax year is not a challenge to the underlying tax liability because such an inquiry does not raise questions of the amount of tax imposed by the Code for a particular tax year, but instead presents the question of whether that liability remains unpaid.  Petitioner's challenge to respondent's allocation of petitioner's payments and deposits similarly raises the question of the amount of tax liability remaining unpaid.  We are mindful that the allocation of payments between trust fund and non-trust-fund taxes affects Mr. Pinner's TFRP liabilities, but the reallocation of payments between trust

fund and non-trust-fund taxes does not change the amount of tax petitioner owes.  We therefore review Appeals' decision not to reallocate petitioner's payments for abuse of discretion.  See <u>Orian v. Commissioner</u>, <u>supra</u>; <u>Kovacevich v. Commissioner</u>, <u>supra</u>; see also <u>Davis v. United States</u>, 961 F.2d 867, 878 (9th Cir. 1992).

A.    <u>Allocation of Undesignated Federal Tax Deposits</u>

Petitioner argues that the settlement officer abused his discretion in declining to reallocate four undesignated Federal tax deposits ratably to the trust fund and non-trust-fund taxes due for the quarter ended December 31, 2003.  We disagree. Petitioner claims that Internal Revenue Manual (IRM) pt. 5.7.4.3(6) (Apr. 13, 2006), requires that the IRS ratably apply undesignated Federal tax deposits between trust fund and non-trust-fund tax liabilities when the payments correspond with the amount of Federal tax deposits due from a taxpayer.  Petitioner relies on a note to IRM pt. 5.7.4.3(6) which states:

> If the taxpayer established that the deposit was in the amount required by Treasury Regulation 31.6302-1(c) * * * the FTD [Federal tax deposit] was considered a designated payment and applied to * * * [the non-trust-fund and the trust fund portions of tax] for the specific period covered by the FTD, even before June 19, 2000.  The taxpayer must provide payroll records that show the composition of the FTD.  The records must reflect exactly how much of the FTD was employer FICA, employee FICA, and income tax withheld.  * * *

The main text of IRM pt. 5.7.4.3(6) states that if notification of a TFRP assessment was issued before June 19, 2000, any

undesignated payments received through December 31, 2002, will first be applied to the non-trust-fund portion of tax, then to collection costs, penalty, and interest, and lastly to the trust fund portion of tax. The note thus states an exception to the general method for payment application referenced in the body of IRM pt. 5.7.4.3(6). As the TFRP assessment against Mr. Pinner relates to taxable quarters in 2003 and 2004, notification of the TFRP assessment could not have been issued before June 19, 2000. Moreover, petitioner asserts on brief that the four Federal tax deposits were made between October 27 and November 28, 2003. As respondent received the undesignated payments after December 31, 2002, and issued the notification of a TFRP assessment after June 19, 2000, IRM pt. 5.7.4.3(6) and its accompanying note is not applicable to petitioner's case.

As a general practice, the IRS allows a taxpayer to designate the application of voluntary tax payments. See Amos v. Commissioner, 47 T.C. 65, 69 (1966); Rev. Proc. 2002-26, 2002-1 C.B. 746; see also Jehan-Das, Inc. v. United States (In re Jehan-Das, Inc.), 925 F.2d 237, 238 (8th Cir. 1991). In the absence of a designation by the taxpayer regarding the application of payments, the IRS generally applies payments in a manner that best serves its interest. See Davis v. United States, supra at 878; Emshwiller v. United States, 565 F.2d 1042, 1046 (8th Cir. 1977). The IRS has long followed the policy of applying

undesignated payments to non-trust-fund taxes before trust fund taxes, see IRM pt. 1.2.14.1.3(1) (June 9, 2003), and many courts have endorsed that policy, see Slodov v. United States, 436 U.S. 238, 252 n.15 (1978); Jehan-Das, Inc. v. United States (In re Jehan-Das, Inc.), supra at 238; United States v. Schroeder, 900 F.2d 1144, 1149 (7th Cir. 1990) (and cases cited threat).  We thus find that the settlement officer did not abuse his discretion in determining that respondent may apply petitioner's undesignated Federal tax deposits to non-trust-fund taxes for the quarter ended December 31, 2003.

B.   Designated Payments

Petitioner next claims that Appeals' refusal to reallocate payments designated by petitioner and Mr. Pinner as trust fund tax payments, but treated by respondent as non-trust-fund taxes, was an abuse of discretion.  In particular, petitioner refers the Court to payments related to those at issue in this case, and a quarter not at issue in this case; namely, the June 2003 quarter.

1.   Petitioner's Designated Payments

Petitioner contends that the settlement officer abused his discretion in affirming respondent's refusal to honor the "Trust Fund Only" designation marked on payments petitioner made. Respondent counters that the settlement officer did not abuse his discretion because petitioner had entered into an installment agreement which gave respondent broad authority to apply payments

in the best interest of the Government.  Petitioner replies that it never "signed" or received Form 433-D and that the payment designation as "Trust Fund Only" must be respected.

Section 301.6159-1(d), Proced. & Admin. Regs., provides that where a taxpayer has entered into an installment agreement the IRS "may take actions to protect the interests of the government" with regard to the unpaid tax liability unless the installment agreement states otherwise.  See IRM pt. 5.14.7.5 (Mar. 30, 2002).  In a letter to Appeals dated May 1, 2008, petitioner's counsel stated that petitioner requested an installment agreement on or about August 31, 2004.  That letter further stated that petitioner and its counsel received a Letter 2850, Approval of Request to Pay Taxes in Installments, notifying them that respondent had approved an installment agreement.

Moreover, the record contains petitioner's account transcripts, which reflect that petitioner had entered into an installment agreement.  Forms 4340 submitted by the parties indicate that petitioner entered into an installment agreement with respondent on September 8, 2004, in connection with its unpaid tax liabilities.  The existence of this installment agreement is further evidenced by the assignment of status 60 to petitioner's accounts as shown in petitioner's employment tax account transcripts.  Respondent's internal policy indicates that status 60 is assigned only with the receipt of a completed Form

433-D formalizing an installment agreement.  See IRM pt.
5.14.7.4.2(9).  An Integrated Collection System entry dated
August 14, 2007, similarly states that petitioner was in "stat
60" and that petitioner was in compliance with its installment
payments.

While petitioner asserts that it never "signed" or received
any Form 433-D formalizing an installment agreement, it does not
state that an installment agreement was not entered into.[9]  On
the basis of respondent's regularly kept business records, we
infer that an installment agreement was entered into.  See United
States v. Ahrens, 530 F.2d 781, 785 (8th Cir. 1976) ("The
presumption of regularity supports the official acts of public
officers and, in the absence of clear evidence to the contrary,
courts presume they have properly discharged their official
duties.").  Nor has petitioner come forward with evidence showing
that the installment agreement contained any terms prohibiting
respondent from applying payments to non-trust-fund taxes before

---

[9]The IRM states that Form 433-D could be used to execute an
installment agreement without obtaining the signature of the
taxpayer on the form.  See IRM pt. 5.14.1.4.3(7)-(8) (July 1,
2002).  While we express concern over respondent's inability to
produce a copy of the installment agreement which petitioner
purportedly entered into, petitioner bears the burden of proving
that it did not "sign" or receive a copy of the Form 433-D.  As
this case was submitted under Rule 122, we could not observe Mr.
Pinner at trial.  We are thus unable to accept the allegations
that no Form 433-D was "signed" or received by petitioner or
petitioner's counsel, especially when the IRS' account
transcripts reflect that such an installment agreement was
entered into.

trust fund taxes. We therefore find that respondent may protect the interests of the Government by applying payments to non-trust-fund taxes for the taxable quarters at issue and for the June 2003 quarter pursuant to section 301.6159-1(d), Proced. & Admin. Regs.

Petitioner further contends that the IRS' policy of giving non-trust-fund taxes priority over trust fund taxes "repudiate[s] the trust fund theory". According to petitioner, payments of tax must first be applied to satisfy the trust fund portion of a taxpayer's liability. Contrary to petitioner's assertion that the "trust fund theory" is "embodied" in section 7501, we find that section 7501 neither explicitly nor implicitly prescribes a hierarchy for application of payments to trust fund and non-trust-fund taxes. We have stated previously that we will not question the IRS' determination of what payment application method is in the best interest of the United States. See Bierhaalder v. Commissioner, T.C. Memo. 1995-307. Respondent's practice of prioritizing the payment of non-trust-fund taxes is reasonable because, consistent with the purpose of section 6672, it enables the Commissioner "'to reach those responsible for the corporation's failure to pay the taxes which are owing.'" See Olsen v. United States, 952 F.2d 236, 239 (8th Cir. 1991) (quoting Newsome v. United States, 431 F.2d 742, 745 (5th Cir. 1970)). Accordingly, we find that the settlement officer did not

abuse his discretion in denying petitioner's request to reallocate designated payments from non-trust-fund to trust fund taxes.

### 2. Mr. Pinner's Designated Payment

Petitioner also contends that a $1,000 payment made by check from Mr. Pinner's personal bank account should have been applied to the TFRP assessed against Mr. Pinner and not to petitioner's non-trust-fund taxes. We are unable to agree for two reasons. First, Mr. Pinner indicated on the check that the payment was for "Trust Funds Only". As Mr. Pinner is not personally liable for non-trust-fund taxes, that designation would be unnecessary unless Mr. Pinner was making payments on behalf of petitioner. Second, as this case was submitted under Rule 122, we have no evidence that Mr. Pinner intended to apply that payment towards his TFRP liability. We thus find that petitioner has failed to carry its burden of proving that the payment Mr. Pinner made was not a payment made on behalf of petitioner under an installment agreement. Accordingly, we find that the settlement officer did not abuse his discretion in affirming respondent's application of Mr. Pinner's $1,000 payment to petitioner's non-trust-fund taxes.

### III. Denial of Face-to-Face Hearing in Little Rock

Petitioner also contends that the settlement officer abused his discretion in refusing to conduct a face-to-face hearing with petitioner in Little Rock. Because this is not a challenge to

the underlying tax liability, we review this issue for abuse of discretion. See Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182.

The regulations interpreting section 6330 provide that a "CDP hearing may, but is not required to, consist of a face-to-face meeting". Sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs. (emphasis added); see also Katz v. Commissioner, 115 T.C. 329, 337 (2000). A taxpayer will ordinarily be offered a face-to-face hearing if the taxpayer presents in the CDP request relevant and nonfrivolous issues relating to the proposed levy. Sec. 301.6330-1(d)(2), Q&A-D7, Proced. & Admin. Regs; see also Golditch v. Commissioner, T.C. Memo. 2010-260. In the case of a taxpayer business, the location of that hearing is the Appeals office closest to the taxpayer's principal place of business. Sec. 301.6330-1(d)(2), Q&A-D7, Proced. & Admin. Regs. Finally, the regulations provide that if a face-to-face hearing is not held, a hearing conducted by telephone, by correspondence, or by review of documents will suffice for purposes of section 6330(b). See id.

As documented in the notice of determination, the settlement officer offered petitioner a face-to-face hearing in Oklahoma City. Because petitioner's counsel refused that arrangement, the settlement officer held the CDP hearing by telephone. As the settlement officer has complied with the procedure promulgated in

the regulations, we find that he did not abuse his discretion in refusing petitioner's request for a face-to-face hearing in Little Rock.

Petitioner also contends that Appeals must grant it a face-to-face hearing in Little Rock, pursuant to the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA), Pub. L. 105-206, sec. 3465(b), 112 Stat. 768. That section provides that "The Commissioner * * * shall ensure that an appeals officer is regularly available within each State." Petitioner acknowledges on brief that Appeals had scheduled settlement officers to conduct face-to-face CDP hearings with taxpayers in Little Rock before and after petitioner's CDP hearing, but apparently not on a date agreeable to petitioner. Appeals also offered petitioner a face-to-face hearing in Oklahoma City even though a CDP hearing is not required to consist of a face-to-face meeting. Sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs. On the basis of the record as a whole, we are satisfied that Appeals has made its officers "regularly available" as required by RRA section 3465(b). Accordingly, we conclude that Appeals did not abuse its discretion in failing to hold a face-to-face hearing with petitioner in Little Rock.

IV. Whether Petitioner Is Entitled to a Two-Part Determination

Petitioner argues that Appeals abused its discretion in not bifurcating the CDP hearing to separately consider petitioner's

underlying tax liability and its proposed collection alternatives. According to petitioner, Appeals prematurely considered petitioner's proposed collection alternatives before a determination was made as to the amount of its underlying tax liability. We understand petitioner to argue that it should be allowed to delay its discussion of proposed collection alternatives until Appeals has reached its determination on petitioner's request to reallocate payments and deposits to its trust fund taxes.

Petitioner relies on Borges v. United States, 317 F. Supp. 2d 1276 (D.N.M. 2004), which held that Appeals abused its discretion when it issued a notice of determination rejecting a proposed collection alternative before it determined the correct amount of taxes owed by the taxpayers. Petitioner's reliance on Borges is misplaced. The taxpayers in Borges challenged the amount of their total tax liability at their CDP hearing, and the settlement officer issued her notice of determination before determining the amount of the taxpayers' tax liability. In the instant case, however, the settlement officer issued a notice of determination which determined the tax liabilities owed by petitioner, including an abatement of $2,452 in Federal tax deposit penalty for the quarter ended September 30, 2003. Thus, unlike the rejection in Borges, the settlement officer's

rejection of petitioner's proposed collection alternatives was not premature.

The regulations under section 6330 allow for more than one CDP hearing with respect to a tax period in two limited circumstances. First, Appeals may conduct more than one CDP hearing if different types of tax are involved in the proposed levy; e.g. employment tax liability and income tax liability. Sec. 301.6330-1(d)(2), Q&A-D1, Proced. & Admin. Regs. Second, where the same type of tax is involved, Appeals may conduct more than one CDP hearing if the amount of unpaid tax has changed because of an additional assessment of tax or an additional assessment of penalties for that period. Id. Petitioner's case does not fall into either of these circumstances. We thus hold that Appeals was not required to bifurcate the CDP hearing to separately review the trust fund tax allocation and petitioner's proposed collection alternatives.

The settlement officer verified that the requirements of applicable law or administrative procedure with respect to the proposed levy had been met. He considered all relevant issues presented by petitioner and determined that the proposed levy action was no more intrusive than necessary. Although petitioner proposed an installment agreement or an offer-in-compromise as a collection alternative to respondent's proposed levy, Mr. Pinner failed to provide the supporting financial information requested

by Appeals.  The settlement officer determined that collection alternatives could not be considered because petitioner failed to provide supporting documentation, especially with regard to the equity in petitioner's remaining assets.  We conclude that it was not an abuse of discretion to reject petitioner's proposed collection alternatives given the lack of information surrounding the remaining equity in petitioner's assets.  See <u>McClanahan v. Commissioner</u>, T.C. Memo. 2008-161 (finding that a settlement officer did not abuse her discretion in rejecting a taxpayer's collection alternatives where that taxpayer refused to disgorge the realizable equity in life insurance policies).  We conclude that the settlement officer satisfied his obligation to petitioner under section 6330.

V.   <u>Conclusion</u>

We have considered all arguments made by the parties, and to the extent not discussed above, we conclude that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.