T.C. Memo. 2012-217

UNITED STATES TAX COURT

BOOKER T. MORRIS III AND JARMESE L. ROBERTS MORRIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19139-10L.                    Filed July 30, 2012.

Booker T. Morris III and Jarmese L. Roberts Morris, pro sese.

<u>Susan K. Greene</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  This case was commenced under section 6330 in response

to a notice of determination concerning collection actions with respect to

petitioners' unpaid income tax liabilities for 2002 and 2003 and Booker T. Morris'

liability for section 6672 trust fund penalties for the last quarterly tax period of

2000, four quarterly tax periods in 2001, quarterly periods ended March 31, September 30, and December 31, 2002, and all four quarterly periods in 2003. All section references are to the Internal Revenue Code.

The primary issue for decision is whether refunds claimed by petitioners on their income tax returns were erroneously and inadequately applied to the various unpaid liabilities.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Texas at the time the petition was filed. Until 2007, Booker T. Morris III (petitioner) was a practicing attorney. Jarmese L. Roberts Morris (Ms. Morris) was an administrator. During 2000, 2001, 2002, and 2003, petitioner maintained his law practice through Booker T. Morris III & Associates, P.C. (PC) and reported the results of that practice on corporate income tax returns of the PC.

On January 29, 2004, the Internal Revenue Service (IRS) sent to petitioner by certified mail a Letter 1153, Trust Funds Recovery Penalty Letter, informing petitioner that the IRS proposed to assess against him trust fund penalties for some, but not all, of the quarterly periods identified above and advising him of his right to appeal or protest the proposed action. The Letter 1153 was sent to petitioners'

correct address but was returned unclaimed after two notices of attempted delivery by the post office. The trust fund penalties were duly assessed after the time for protest or appeal had passed. The assessed amounts were determined in accordance with regular IRS procedures used to calculate trust fund penalties for failure to pay over employment taxes shown due on employer's quarterly payroll tax returns.

Petitioners filed joint Federal income tax returns for 2000 through 2009, inclusive. The returns for 2002 and 2003 showed balances due, which were duly assessed by the IRS. Petitioners' returns for 2001 and 2004 through 2008, inclusive, reported overpayments and requested that the overpayments be refunded to them.

At the time the joint returns requesting refunds were filed, petitioners owed various liabilities for earlier years. Rather than paying the requested refunds, the IRS applied the claimed overpayments to the outstanding liabilities. Although the application of overpayments was neither chronological nor otherwise systematic, each credit for a claimed overpayment was reflected in IRS records of assessments of civil penalties and income tax owed by petitioners. So far as the record reflects, petitioners did not dispute the application of the overpayments or direct that they be applied to specific liabilities until June 2010, when the collection action that

resulted in the notice of determination was being reviewed in the IRS Office of Appeals.

On September 29, 1997, the IRS filed a notice of Federal tax lien for Ms. Morris' income tax liability for 1983 and a duly assessed civil penalty liability for the tax period ended September 30, 1996 (1996 liability). Ms. Morris submitted four offers-in-compromise from January 1998 to October 2000, each of which was ultimately denied by the IRS. The pendency of the offers-in-compromise, however, extended the period of limitations on collection of the 1996 liability to August 31, 2010. The lien was released in August 2007 pursuant to a program by which a lien is automatically released 10 years after it is filed. On April 15, 2009, the IRS applied an overpayment credit claimed on petitioners' 2008 income tax return to the 1996 liability. On September 6, 2010, the IRS ceased attempts to collect any part of the $36,436.21 then remaining on the 1996 liability.

On December 23, 2009, a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, was sent to petitioner with respect to his trust fund liabilities for the quarter ended December 31, 2000, and the 11 quarters in 2001, 2002, and 2003 that are the subject of the determination under review here. Also on that date, a Letter 1058 was sent to petitioners with respect to their income

tax liabilities for 2002 and 2003. Petitioners requested a hearing on each notice, claiming offsets generating refunds to be applied to the unpaid balances.

The requests for hearing were referred to an Appeals settlement officer, who reviewed transcripts of account and administrative files and verified that all legal and procedural requirements had been met before the final notices of intent to levy had been issued.

During a series of exchanges by letter, fax, and telephone, the settlement officer explained to petitioner how overpayment credits had been applied to the unpaid liabilities and that offsets are routinely applied to the oldest balances to minimize accrual of penalties and interest. The settlement officer advised petitioner of the availability of and requirements for an offer-in-compromise as well as requests for abatement of interest and requests for section 6015 relief by Ms. Morris. Petitioner declined to pursue a collection alternative. Instead petitioner sent letters dated June 8, 10, and 22, 2010, requesting that overpayments claimed on income tax returns be applied in ways specified by petitioner rather than in the manner previously applied by the IRS.

Notices of determination sustaining the proposed levies were sent on July 26, 2010.

## OPINION

Petitioners contend that the overpayments claimed on their income tax returns for 2001 and 2004 through 2007, inclusive, should be applied to the unpaid balances of their outstanding liabilities in accordance with their designation by letters sent in June 2010 rather than as applied by the IRS for many years before the collection action under review here commenced. They also claim that collection of the 1996 liability was barred by the statute of limitations at the time the last credit was applied and that the trust fund penalties are incorrect because they are inconsistent with the corporate income tax returns filed by petitioner's PC for the years in which the penalties accrued. They have neither produced credible evidence nor cited authorities in support of their positions.

Overpayments by a taxpayer may be applied to other tax liabilities of the taxpayer at the discretion of the IRS. See sec. 6402(a); Weber v. Commissioner, 138 T.C. ___, ___ (slip op. at 14-15) (May 7, 2012); sec. 301.6402-3(a)(6)(i), Proced. & Admin. Regs. Although in some circumstances the taxpayer may elect on a return to have an overpayment applied to a preexisting or future liability, petitioners requested refunds on each overpayment return. Because of the outstanding liabilities, they were not entitled to those refunds. They are not entitled

to compel retroactively the application of overpayments to long-outstanding liabilities in the manner that they belatedly suggest.

Using transcripts of petitioners' accounts, the settlement officer explained to petitioner the manner in which the overpayments were applied. There was testimony at trial explaining the transcripts and the policies and practices by which various transactions and entries occurred. The application of specific credits to specific liabilities was detailed in respondent's answering brief. Petitioners did not file a reply brief ordered by the Court, and at no time have they pointed to an erroneous transaction in the IRS records or to an overpayment credit that was not applied to one of their many outstanding liabilities.

Petitioner belatedly attempts to dispute the amounts of the trust fund liability penalties that were assessed against him in relation to his PC. Respondent contends that petitioner is precluded from doing so because he had a prior opportunity in response to the Letter 1153 sent to him in January 2004, even though respondent acknowledges that the letter was not actually received by petitioner. See sec. 6330(c)(2)(B); Mason v. Commissioner, 132 T.C. 301, 322-323 (2009). Because the Letter 1153 was sent to the correct address and unclaimed after two notices of attempted delivery, respondent contends that we should assume that petitioner refused delivery. See Sego v. Commissioner, 114 T.C. 604, 611 (2000). We are

not persuaded that we can conclude on this record that petitioner deliberately refused delivery. Moreover, the letter did not address all of the periods involved in this case. Even if petitioner is entitled to dispute the underlying liabilities, however, he has offered only vague arguments that the assessed trust fund penalties are inconsistent with his corporate income tax returns and that, therefore, the IRS did not correctly determine the amounts. As explained at trial and in the exhibits, the assessed penalties are based on employer's quarterly payroll tax returns, not on income tax returns. The quarterly returns are not in the record, and there is no reason to believe that the procedures and records of the IRS in assessing the penalties are incorrect.

Finally, petitioners argue that collection of the 1996 tax liability was barred when their 2008 overpayment was applied to that liability in April 2009. Their argument is based on the release of the Federal tax lien in 2007. The lien, however, is independent of the liability, which could be collected until the period of limitations, extended by Ms. Morris' successive offers-in-compromise, expired in 2010. See Hoyle v. Commissioner, 136 T.C. 463, 474 (2011). At that time collection efforts ceased with respect to the balance of the 1996 liability.

We have considered the other arguments of the parties.  They are irrelevant, unnecessary to the result, or otherwise lack merit.

<u>Decision will be entered for</u>

<u>respondent</u>.